**STATE of Missouri, Respondent,**

v.

**Justin J. WALKUP, Appellant.**

No. SC 87837.

Supreme Court of Missouri, En Banc.

May 1, 2007.

Jeannie M. Willibey, Office of Public Defender, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for Respondent.

MICHAEL A. WOLFF, Chief Justice.

**Introduction**

Justin J. Walkup was convicted after a jury trial of first degree murder and armed criminal action for stabbing his girlfriend to death. The trial court excluded the defense's attempt to present expert witness testimony that Walkup had mental disorders that would have made it less likely that he would have deliberated before killing his girlfriend. The element of deliberation—defined by statute as "cool reflection for any length of time no matter

how brief"[1]—is what distinguishes first and second degree murder.[2] If the defense had successfully rebutted the element of deliberation, Walkup may have been found guilty of second degree murder rather than first degree murder.

The defense did not attempt to offer the psychologist's expert testimony to exclude responsibility under what is commonly known as a "not guilty by reason of insanity" plea. On appeal the state defends the trial judge's exclusion on the grounds that the defense did not comply with the procedural notice requirements in section 552.030 and this Court's rules as to mental disease or defect excluding responsibility.[3]

The state also asserts that the defense violated discovery rules and that exclusion of the expert testimony was an appropriate sanction for the violation.

The psychologist's expert testimony was admissible under section 552.015.2(8)[4] on the issue of whether Walkup had the requisite state of mind—deliberation—which is an element of the offense of first degree murder. This "diminished capacity" evidence is not subject to the same procedural requirements as is evidence of mental disease or defect excluding responsibility. There was no discovery violation.

The exclusion of the testimony was reversible error.

**Facts and Procedural History**

Summarized and viewed in the light most favorable to the verdict, the state's evidence was that, on the evening of January 21, 2003, Walkup killed his girlfriend, Deborah, by stabbing and strangling her. Walkup then wrecked Deborah's car when he ran off of the highway. Walkup admitted to several persons that he had killed Deborah. Two knives with Deborah's blood on them were found on the property where Walkup wrecked the car. Walkup admitted to police, orally and in writing, that he had killed Deborah.

Witnesses, including the police who interviewed Walkup, described him as very emotional, on an emotional "roller coaster," talking crazy, alternating between calmness and anxiety, and appearing to be drunk.

Walkup did not testify at trial. The defense called Dr. Sisk as its only witness, and the state objected. Defense counsel said that Dr. Sisk would testify that Walkup suffered from mental disorders that could have affected his ability to deliberate before killing Deborah. Defense counsel said: "[w]e are drawing the line that the

1. Section 565.002(3). All statutory references are to RSMo 2000 unless otherwise indicated.

2. Section 565.020.1 defines first degree murder as: "knowingly caus[ing] the death of another person after deliberation upon the matter."

Section 565.021.1(1) defines second degree murder as: "knowingly caus[ing] the death of another person or, with the purpose of causing serious physical injury to another person, caus[ing] the death of another person[.]"

3. Section 552.030.2 states: "Evidence of mental disease or defect excluding responsibility shall not be admissible at trial of the accused unless the accused, at the time of entering such accused's plea to the charge,

pleads not guilty by reason of mental disease or defect excluding responsibility, or unless within ten days after a plea of not guilty, or at such later date as the court may for good cause permit, the accused files a written notice of such accused's purpose to rely on such defense . . . ."

Rule 25.05(A)(4) states: "If the defendant intends to rely on the defense of mental disease or defect excluding responsibility, disclosure of such intent shall be in the form of a written statement by counsel for the defendant(.)"

4. Section 552.015.2(8) provides that evidence of mental disease or defect is admissible "[t]o prove that the defendant did or did not have a state of mind which is an element of the offense[.]"

doctor should not say ... in any context that Mr. Walkup was in any way incapable of deliberating on this night. He's simply here to talk about Mr. Walkup's history, to talk about his diagnosis[.]" Defense counsel planned to argue that the jury should consider this evidence in determining whether Walkup "acted in a cool frame of mind," which goes to the issue of deliberation.

The state objected that "such evidence is not admissible unless there has been a defense raised under Chapter 552, either excluding responsibility altogether or diminished capacity." Because Walkup had not notified the state of his intent to pursue such a defense as required by the statute, the state argued that the evidence was inadmissible.

After these arguments, the trial court asked the prosecutor when she became aware that Dr. Sisk would testify. The prosecutor said that she was aware that Dr. Sisk had evaluated Walkup but did not receive his report until the week before trial. Defense counsel did not dispute this, but argued that the state had known for "a long time" that Dr. Sisk was evaluating Walkup. The defense some months prior to trial told the prosecution that it planned to call Dr. Sisk. On that basis, the state requested and received permission to have its own expert evaluate Walkup.

At trial, the state's objection to Dr. Sisk's testimony was that the defendant was required to give notice of a diminished capacity defense under chapter 522, not that the evidence was not timely disclosed. The trial court, however, prohibited the testimony based on its determination that exclusion was "fair" because "the State ... didn't get the report until late."

Defense counsel made an offer of proof by calling Dr. Sisk to testify outside the jury's presence. Dr. Sisk interviewed and tested Walkup, interviewed Walkup's family and ex-wife, and reviewed Walkup's records. Dr. Sisk testified that Walkup had been consistently diagnosed with and treated for bipolar disorder since he was a teenager. Walkup had been hospitalized for problems related to bipolar disorder and had been treated with medication several times. Dr. Sisk concurred in the prior diagnoses and opined that Walkup suffered from "mixed type" bipolar disorder, which is characterized by a combination of the symptoms of bipolar manic and bipolar depressed. Symptoms of bipolar manic include increased energy and excessive involvement in activities such as substance abuse. Symptoms of bipolar depressed include feelings of sadness and worthlessness and suicidal thoughts. People suffering from mixed type bipolar disorder display feelings of irritability with both manic and depressed episodes and react to events with exaggerated emotions. In other words, an event that would make a normal person mildly sad could send a bipolar person into a deep depression, and an event that would cause excitement in a normal person could make a bipolar person very agitated and anxious. Dr. Sisk testified that "those conditions certainly disrupted [Walkup's] past behavior, his decision making, and how he conducted himself."

Dr. Sisk was the only defense witness. Because he was excluded by the trial court, the defense did not present any evidence. The jury deliberated for eight hours and returned a verdict of guilty for first degree murder and armed criminal action.

After opinion in the court of appeals, this Court granted transfer. Mo. Const. art. V, sec. 10.

The judgment is reversed and remanded for a new trial.

**Was there a discovery violation in this case?**

 Although the state did not object to the timeliness of disclosures before or during trial, that was the stated basis of the trial court's exclusion. On appeal, the state argues that this exclusion was proper under Rule 25.05(A), which requires the defendant to disclose—upon written request by the state—expert reports, the results of mental examinations, and the names of all witnesses who will be called. The rule also requires that, "[i]f the defendant intends to rely on the defense of mental disease or defect excluding responsibility, disclosure of such intent shall be in the form of a written statement by counsel for the defendant[.]" Rule 25.05(A)(4). This obligation is continuing; if the defendant later receives more information than initially disclosed, he has the duty to disclose this information to the state as well. Rule 25.08.

Four months before trial, the state served a discovery request seeking: (1) any reports of expert witnesses, including the results of any mental examinations; (2) the names of any witnesses the defense intended to call at trial; and (3) whether the defense intended to rely on a defense of mental disease or defect.

The state does not dispute that, after this request, defense counsel made oral communications regarding the anticipated use of Dr. Sisk as an expert witness. The state was aware that Dr. Sisk was examining Walkup because it requested and received permission to conduct its own examination, based on its assertion that the defense was having Walkup evaluated.[5]

 The purpose of the criminal discovery rules, including Rule 25.05, is to eliminate surprise by "allow[ing] both sides to know the witnesses and evidence to be introduced at trial." *State v. Whitfield*, 837 S.W.2d 503, 508 (Mo. banc 1992). That purpose was satisfied here by defense counsel's oral conversations with the state and by its disclosure of Dr. Sisk's report and his endorsement as a witness prior to trial. The defense also met its requirements under the continuing disclosure obligations of Rule 25.08 by providing Dr. Sisk's report to the state in a timely manner after it was received by the defense.

While the timing and method of the defense disclosures are not ideal, it is sig-

5. The disagreement between the prosecutor and the defense attorney as to the planned use of Dr. Sisk's testimony illustrates the confusion over the "diminished capacity" defense. According to the state, defense counsel said, in response to discovery and during arguments, that Walkup did not intend to rely on a diminished capacity defense. The response to the state's discovery request says that Walkup is "not intending to rely on defense of mental disease or defect." This was in response to the state's request for disclosure of any "defense of mental disease or defect *excluding responsibility*." (Emphasis added). Read in context, this response indicates that Walkup did not intend to use Dr. Sisk's testimony to argue that he is not responsible for his conduct—in other words, he did not intend to pursue a "not guilty by reason of insanity" defense. Defense counsel also stated, during arguments on the issue of the admissibility of Dr. Sisk's testimony, that "I actually [previously] told the prosecutor that my expectation was, that we were not going for an affirmative defense of diminished capacity or NGRI".

It is clear from counsel's attempt to call Dr. Sisk, however, and from his statements about how Dr. Sisk's testimony would be admitted, that he did intend to pursue a diminished capacity defense at the time of trial. Because Walkup was not required to provide notice of his intent to pursue a diminished capacity defense, the fact that he may have previously told this to the state does not preclude his offering Dr. Sisk's testimony at trial, because he provided Dr. Sisk's statement to the prosecution and endorsed Dr. Sisk as a witness prior to trial.

nificant that the state never objected, before or during trial, to the timeliness or method of disclosure. In fact, the prosecutor stated, "[a]s regards the issue of Dr. Sisk's testimony, the state's argument was not and is not that Dr. Sisk's testimony should have been excluded because the state wasn't given proper notice of what he was going to testify to or what his report said."

## Admissibility of evidence of mental disease or defect

The state's objection to Dr. Sisk's testimony at trial was that evidence of mental disease or defect is inadmissible unless the defendant has given prior written notice of his intent to rely on a defense involving mental disease or defect. Although the trial court did not rule on this issue, the state argues it in this Court as an alternative basis for affirming the trial court's decision.

Chapter 552 of the Missouri statutes addresses the admissibility of evidence of mental illness in criminal proceedings. Section 552.015.2 authorizes the use of evidence of mental disease or defect in nine circumstances, two of which are relevant here.

First, section 552.015.2(2) allows evidence of mental disease or defect "[t]o determine whether the defendant is criminally responsible as provided in section 552.030[.]" Section 552.030, in turn, requires the defendant to plead "not guilty by reason of mental disease or defect excluding responsibility" or to notify the state in writing of the intent to use this defense. This is commonly known as the defense of "not guilty by reason of insanity" or NGRI. If this defense is successful, the defendant is not found criminally responsible for his conduct, but instead is remanded to the custody of the department of mental health and committed to a state facility until a court orders that the defendant be released. Section 552.040.2–20.

Second, section 552.015.2(8) allows the defendant to present evidence of mental disease or defect "[t]o prove that the defendant did or did not have a state of mind which is an element of the offense[.]" This has become commonly known as the defense of diminished capacity.

The state objected to Dr. Sisk's testimony on the basis that a defendant wishing to assert diminished capacity—like one asserting "not guilty by reason of insanity"—must comply with the notice requirements of section 552.030. Because Walkup did not file a written statement of his intent to rely on the diminished capacity defense, the state argues, he could not present this evidence at trial.

Prior notice is not required, however, for the defense to present evidence negating a culpable mental state that is an element of the offense—sometimes called a "diminished capacity defense"—to demonstrate lack of a requisite mental state.

## The "diminished capacity" defense

 When first recognizing the diminished capacity defense, this Court defined it as " 'proof of mental derangement short of insanity as evidence of lack of deliberate or premeditated design. In other words, it contemplates full responsibility, not partial, but only for the crime actually committed.' " *State v. Anderson*, 515 S.W.2d 534, 540 (Mo. banc 1974) (quoting *State v. Padilla*, 66 N.M. 289, 347 P.2d 312, 314 (1959)).

 Although "not guilty by reason of mental disease or defect excluding responsibility" (NGRI) and "diminished capacity" are often confused, they are separate doctrines. This distinction is clearly set forth in the comments to the Missouri Approved Instructions relating to diminished capaci-

ty: "The use of evidence of mental disease or defect negating the existence of a required culpable mental state is not the same as the affirmative defense of lack of responsibility by reason of mental disease or defect. (See MAI–CR 3d 306.02)." MAI–CR 3d 308.03, Note 3. "Evidence of mental disease or defect negating a culpable mental state is simply evidence that the defendant did not have the culpable mental state that is an essential element of the crime." *Id.*

 "Not guilty by reason of mental disease or defect excluding responsibility" (NGRI) is considered an affirmative defense, requiring the defendant to carry the burden of proving that he has a mental disease or defect excluding responsibility. Section 552.030.6. By contrast, evidence of diminished capacity is introduced to negate the prosecution's evidence of a required culpable mental state. It is commonly referred to as a defense, but it is a negative or negating defense because the defendant has no burden to present evidence or to persuade. See section 552.015.2(8). Evidence of diminished capacity is intended simply to negate an element of the state's case—a culpable mental state—which is the state's burden to prove beyond a reasonable doubt. As the MAI–CR note explains: "In order to use evidence of mental disease or defect to negate a required culpable mental state, it is not necessary that the defendant assert the affirmative defense of lack of responsibility by reason of mental disease or defect." [6]

The state relies on this Court's opinions in *State v. Erwin*, 848 S.W.2d 476 (Mo. banc 1993), and *State v. Copeland*, 928 S.W.2d 828 (Mo. banc 1996), for its position that a defendant is required to comply with the notice provisions of section 552.030 in order to assert a diminished capacity defense.

In *Erwin*, the defense presented expert testimony that defendant suffered from "alcoholic blackout" in an attempt to negate the "knowing" element of second-degree murder. Defense counsel did not comply with the notice provisions of section 552.030 and, prior to calling the expert witness, "disavowed his intent to advance the defense of diminished responsibility or mental disease or defect." 848 S.W.2d at 479–80. After noting that the evidence presented was that the defendant was *incapable* of knowing the nature and consequences of his conduct—not merely that he would have *difficulty* doing so—this Court stated, "[a] defense of diminished capacity because the accused is incapable of forming the mental element necessary to commit a crime is necessarily based on evidence of a mental disease or defect. . . . Evidence of a mental disease or defect is not admissible at trial unless the accused pleads the defense or notifies the court in writing of intent to rely on the defense within ten days after the plea or at such later date as the court may for good cause permit." *Id.* at 480.

Although the parties refer to diminished capacity in *Erwin*, it is clear that the defense was attempting to exclude or avoid responsibility. The mental disease or defect was raised to avoid criminal responsibility altogether. *Erwin* is factually distinguishable, because in *Erwin*, the testimony was that the defendant was incapable of deliberating, whereas in this case Dr. Sisk's testimony would have been that Walkup's bipolar disorder could have affected his ability to deliberate. The refer-

6. MAI–CR3d 308.03, Note 3. The note further explains: "In a given case, however, the defendant may assert lack of responsibility by reason of mental disease or defect and also use evidence of mental disease or defect to negate a required culpable mental state."

ences to diminished capacity in *Erwin* are *dicta*.

*Copeland* is similarly distinguishable. There the trial court excluded evidence that the defendant suffered from battered spouse syndrome when she participated in several murders. Defense counsel said repeatedly that he was not relying on mental disease or defect excluding responsibility or on diminished capacity. 928 S.W.2d at 837. This Court said, "[i]f the evidence was being offered as expert testimony of a diagnosis of a mental disease or defect *that excluded defendant's criminal responsibility,* the defendant must comply with the notice requirements of 552.030." *Id.* (emphasis added). Evidence of diminished capacity does not exclude a defendant's criminal responsibility. Rather, evidence of diminished capacity, if believed by the jury, would make the defendant responsible for the crime he actually committed; for example, second degree murder instead of first degree murder. Although *Copeland* refers to both "diminished capacity" and "not guilty by reason of insanity" as instances where mental illness evidence could be admitted, it does not state that notice is required to assert diminished capacity.

The history of section 552.030 supports the interpretation that notice is not required for diminished capacity evidence under section 552.015.2(8). Prior to 1985, the provision for admitting evidence of mental disease or defect to demonstrate that the defendant did not have the requisite mental state was found in section 522.030, which then and now contains notice requirements for the use of such evidence. *See* 552.030.3(1), RSMo 1978. In 1985, the legislature created new section 552.015, removed the state of mind provision from section 552.030, and placed it at section 552.015.2(8). At the same time, the legislature added subsection 552.015.2(2), which explicitly incorporated the requirements of section 552.030. The simultaneous enactment of the two provisions supports this Court's conclusion that the legislature did not intend for both to trigger the procedural requirements of section 552.030. Rather, it can be assumed that only the provision that directly references section 552.030 is intended to trigger those requirements.

This result makes sense when considering the different implications of the two defenses. A "not guilty by reason of mental disease or defect excluding responsibility" (NGRI) defense requires the defendant to comply with special notice provisions and injects into the case an issue on which defendant has the burden of proof. If defendant succeeds on his affirmative defense, he is absolved of criminal responsibility. A diminished capacity defense, if successful, does not absolve the defendant of responsibility entirely, but makes him responsible only for the crime whose elements the state can prove. *See State v. Anderson,* 515 S.W.2d at 540; *State v. Jones,* 134 S.W.3d 706, 713–14 (Mo.App.2004); *State v. Lewis,* 188 S.W.3d 483, 488 (Mo.App.2006).

## The Standard of Review and the Question of Prejudice

Courts in this state frequently say that the admissibility of evidence is within the discretion of the trial court. *See, e.g., State v. Morrow,* 968 S.W.2d 100, 106 (Mo. banc 1998). That is true, in many instances, but is not accurate where an evidentiary principle or rule is violated, especially in criminal cases.

While this Court does not have the authority to promulgate rules of evidence, Mo Const. Art. V, section 5, that is not to say that there are no "rules" and that evidentiary questions are always left to

trial court discretion. Whether there is an evidentiary error is determined first by reference to applicable principles, which although not organized as such—can be said to be our courts' rules of evidence.[7] These Missouri evidence rules or principles come from various sources: statutes,[8] the common law,[9] and the Constitution.[10]

■■■ To be admissible, evidence must be relevant. On questions of relevance, the trial court certainly has discretion, but its discretion is bounded by the principle that the court's rulings will be overturned if they are "clearly against the logic of the circumstances." *See, e.g., State v. Forrest*, 183 S.W.3d 218, 223 (Mo. banc 2006). Evidentiary decisions of the trial court as to relevance are reviewed, in the context of the whole trial, to ascertain whether the defendant received a fair trial.

■■■ Beyond questions of relevance, even where a particular evidentiary ruling is in error, appellate courts review evidentiary errors to ascertain whether they were prejudicial, that is, whether the errors are more likely than not to have affected the outcome. *See State v. Roberts*, 948 S.W.2d 577, 592 (Mo. banc 1997). That review often is referred to as a review of trial court discretion, particularly where the erroneous ruling does not result in a reversal because it does not seem to have made a difference in the outcome of the case. Another area left to trial court discretion is the exclusion of evidence as a sanction for violation of discovery rules. The sanction is used sparingly against a defendant in a criminal case because of the

trial court's duty to ensure a fair trial by allowing the defendant to put on a defense. A defendant in a criminal case has a constitutional right to present a complete defense. *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984).

■■■ When it comes to applying evidentiary principles or rules, the erroneous exclusion of evidence in a criminal case creates a rebuttable presumption of prejudice. *Burton v. State*, 641 S.W.2d 95, 99 (Mo. banc 1982); *State v. Rhodes*, 988 S.W.2d 521, 529 (Mo. banc 1999). The state may rebut this presumption by proving that the error was harmless beyond a reasonable doubt. *State v. Sanders*, 126 S.W.3d 5, 23 (Mo.App.2003).

In this case the inquiry is simply whether the trial court erred in excluding the testimony of Dr. Sisk, and if so, was the error prejudicial? The trial court excluded the testimony because it determined that exclusion would be "fair" to the state in view of the lateness of the expert's report. As previously discussed, the trial court erred in excluding Dr. Sisk's testimony, first, because there was no discovery violation and, second, because notice was not required for a diminished capacity defense.

The state does not challenge the relevance of Dr. Sisk's proffered testimony. Evidence of Walkup's alleged lack of a culpable mental state diminished capacity was both legally and logically relevant to the issue of whether the jury should be-

---

7. *See, generally,* John C. O'Brien, Missouri Law of Evidence, 4th Ed., § 1–1 (2002); William Schroeder, Missouri Practice v. 22, Missouri Evidence, 2nd Ed., § 101.1 (1999).

8. *See, e.g.,* section 490.660 et seq. (admission of business records).

9. *See, e.g., Bynote v. Nat'l Super Markets, Inc.,* 891 S.W.2d 117, 120 (Mo. banc 1995) (discussing hearsay rule).

10. *See, e.g., State v. Kemp,* 212 S.W.3d 135, 147–48 (Mo. banc 2007) (confrontation clause generally prohibits the introduction of testimonial statements made by a witness who does not testify).

lieve the state's evidence that he acted with deliberation. Exclusion of the evidence was error.

**Was the error prejudicial?**

 Trial court error in the admission of evidence is prejudicial if the error "so influenced the jury that, when considered with and balanced against all of the evidence properly admitted, there is a reasonable probability that the jury would have reached a different conclusion" without the error. *Roberts,* 948 S.W.2d at 592.

The error was prejudicial. Walkup admitted to witnesses that he committed the murder, and there was ample evidence to prove it. The main issue for the jury was deliberation the sole issue that separates first degree murder from second degree murder. On this point, the trial court excluded Walkup's only defense. That, in itself, is prejudicial in most circumstances.

Beyond the exclusion of Walkup's only defense, the context of the evidence at trial supports the conclusion that Walkup was prejudiced by the evidentiary error. The evidence adduced in Walkup's offer of proof was such that the jury could have found that Walkup was suffering from the effects of bipolar disorder at the time of the murder. There was evidence that, on the night of the murder, he was very emotional, unstable, and changed from calm to anxious and back again many times. The excluded evidence went directly to the issue of Walkup's mental condition and its affect on his ability to deliberate. If the jury had heard Dr. Sisk's testimony, it presumably could have drawn a connection between Dr. Sisk's testimony as to the effects of Walkup's bipolar condition on his state of mind and the behavior he exhibited at the time of the killing. If the jury had accepted the evidence as negating the culpable mental state of deliberation, the jury would have found him guilty of sec-

ond-degree murder rather than first-degree murder. As it was, the jury deliberated for eight hours without any evidence from the defense. The exclusion of this evidence was prejudicial.

**Conclusion**

The trial court erred in excluding evidence of mental disease or defect negating a culpable mental state, deliberation, which is an element of the crime of first degree murder. The use of such evidence to negate an element of the crime charged, sometimes called a "diminished capacity" defense, is not an affirmative defense for which the defendant is required to give advance notice.

The judgment of the circuit court is reversed, and the case is remanded for a new trial.

All concur.