STATE of Missouri, Plaintiff–Respondent,

v.

James Russell WILLIAMS, Defendant–Appellant.

No. SD 32270.

Missouri Court of Appeals, Southern District, Division Two.

Aug. 27, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 3, 2013.

Application for Transfer Denied Dec. 24, 2013.

Samuel Buffaloe, Columbia, MO, Attorney for Appellant.

Chris Koster, Attorney General, and Jessica P. Meredith, Assistant Attorney General, Jefferson City, MO, Attorneys for Respondent.

GARY W. LYNCH, J.

James R. Williams ("Defendant") appeals his conviction, following a jury trial, for the class C felony of possession of a controlled substance, see section 195.202, as a persistent drug offender, see section 195.275.[1] Defendant claims the trial court erred in not suppressing and in admitting the drug evidence seized from the search of his residence and in admitting testimony of the involvement of a SWAT team in the execution of that search warrant. Rejecting both claims, we affirm.

### Factual Background

On March 30, 2011, seven law enforcement officers executed a search warrant on Defendant's home. They had probable cause to believe that Defendant had methamphetamine in the home. Defendant and Savannah White were in the master bedroom when the officers arrived. The officers placed them in flexible hand restraints and directed them to the living room so that the officers could conduct the search.

In the master bedroom, officers located men's clothing. On top of the dresser, officers found a yellow cup that contained "several empty plastic baggies and one baggy with a white crystal substance in it." The officers seized the substance, which lab testing later confirmed as methamphetamine.

Officers then placed Defendant under arrest, and he was read his *Miranda* rights.[2] Defendant said that the methamphetamine was his and that White did not have anything to do with it.

### Discussion

### Defendant Waived Appellate Review of Seized Evidence

Defendant's first point asserts that "[t]he trial court erred in admitting the evidence found as a result of the execution of the search warrant because the officers executed the search warrant in violation of § 542.291." The State responds that Defendant waived appellate review of this claim when he affirmatively announced to the trial court that he had no objection to its admission when it was offered at trial. We agree with the State.

Before trial, Defendant filed a motion to suppress the physical evidence obtained pursuant to the search warrant because it "was served at night without there being any circumstances that justified a nighttime search." After a suppression hearing, the court overruled Defendant's motion. The day before the trial, Defendant renewed his motion to suppress. The court again overruled his motion. When the State offered the contested evidence at trial on two separate occasions through two separate exhibits, however, defense counsel affirmatively stated to the trial court both times that she had no objection to its admission.

In his motion for new trial, Defendant alleged that "[t]he trial court erred in failing to grant the Defendant's Renewed Motion to Suppress Evidence" because "[t]he serving of a search warrant at [night] is not allowed unless it is shown to be other-

---

1. All statutory references are to RSMo Cum. Supp.2010.

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

wise impracticable. RSMo § 542.291." When the trial court addressed Defendant's motion for new trial during the sentencing hearing, however, defense counsel declined the opportunity to argue its merits. The trial court then denied the motion without any comment.

■■■ The rule that a party is obligated to make specific objections at trial to proffered evidence is firmly established. *State v. Baker*, 103 S.W.3d 711, 716 (Mo. banc 2003). This rule applies even if a party has previously filed and the court has ruled upon a motion to suppress that evidence. "A pretrial ruling on a motion to suppress and the court's later decision to admit evidence at trial are two separate procedures." *State v. Lloyd*, 205 S.W.3d 893, 900 (Mo.App.2006). "A trial objection to the admission of evidence challenged in a motion to suppress is required to preserve the issue for appellate review." *Id.* (citing *State v. Williams*, 9 S.W.3d 3, 11 (Mo.App.1999)). "'When a pretrial motion to suppress evidence is denied, the defendant must renew the objection or make a specific objection at trial when the evidence is presented to preserve the issue of appellate review. The trial court must be given the opportunity to reconsider its prior ruling against the backdrop of the evidence adduced at trial.'" *Lloyd*, 205 S.W.3d at 900 (quoting *State v. Morrow*, 996 S.W.2d 679, 681–82 (Mo.App.1999) (internal citations omitted)).

■■■ Moreover, "[t]he general rule in Missouri is that a statement of 'no objection' when the evidence is introduced affirmatively waives appellate review of the admission." *State v. Oglesby*, 103 S.W.3d 890, 891 (Mo.App.2003) (citing *State v. Starr*, 492 S.W.2d 795, 801 (Mo. banc 1973)); *see also Baker*, 103 S.W.3d at 716 ("Missouri courts have consistently held

that stating 'no objection' when evidence is introduced precludes direct appellate review of the admission."). Such a waiver also precludes plain error review, as allowed by Rule 30.20.[3] *State v. Johnson*, 284 S.W.3d 561, 582 (Mo. banc 2009) (holding that plain error review does not apply when a party affirmatively states that it has no objection to evidence an opposing party is attempting to introduce).

The Supreme Court of Missouri, in *Baker*, approved an exception to these general rules on objections where there was a mutual understanding between the defendant, the trial court, and the prosecutor that the defendant did not intend to repudiate his prior objection when he or she announced "no objection" to the admission of the evidence at trial. 103 S.W.3d at 716–17. After the denial of both of his motion to suppress and the renewal of that motion immediately before trial, the defendant, during the trial in *Baker*, requested and obtained a continuing objection to the evidence in question before he announced that he had no objection when the evidence was introduced. *Id.* After trial, the trial court expressly considered the merits of defendant's claim regarding the admission of the evidence when ruling on defendant's motion for new trial without any objection from the prosecutor. *Id.* at 716. Based upon this record, our Supreme Court concluded that the trial court and the prosecutor understood that the defendant was, in effect, "stating that he had no objection other than the continuing objection." *Id.*

The *Baker* exception has been described as being "narrow," *Oglesby*, 103 S.W.3d at 891, "rare," and "factually-based," *State v. Williams*, 118 S.W.3d 308, 313 n. 9 (Mo. App.2003). The mere filing of a pretrial motion or motions raising an objection to evidence is not sufficient to invoke the

---

**3.** All rule references are to Missouri Court Rules (2013).

exception. *See, e.g., State v. McWhorter,* 240 S.W.3d 761, 763 (Mo.App.2007) (finding that the trial court's pre-trial denial of motion to suppress and renewal of that motion on day of trial does not "fall within the narrow 'mutual understanding' exception outlined in *Baker.*"); *State v. Estes,* 166 S.W.3d 119, 120–21 (Mo.App.2005) (finding that the trial court's pretrial denial of defendant's motion in limine to exclude evidence of an uncharged controlled drug buy was not sufficient evidence "that a mutual understanding existed regarding defendant's objection to evidence of the controlled buy."); *Oglesby,* 103 S.W.3d at 891 (finding that the trial court's pretrial denial of the defendant's motion to suppress the evidence seized from his property in the absence of any other evidence of a mutual understanding does "not fit within the narrow exception outlined in *Baker.*"). The trial court's pretrial ruling on such motions is interlocutory and subject to change during the trial. *See State v. Morgan,* 366 S.W.3d 565, 586 (Mo.App. 2012) (ruling on motion to suppress); *State v. Whitwell,* 215 S.W.3d 760, 761 (Mo.App. 2007) (ruling on motion *in limine* ). As previously noted, " 'The trial court must be given the opportunity to reconsider its prior ruling against the backdrop of the evidence adduced at trial.' " *Lloyd,* 205 S.W.3d at 900 (quoting *Morrow,* 996 S.W.2d at 681–82).

Our review of the cases that have applied the *Baker* "mutual understanding" exception, both pre– and post-*Baker,* reveals that the appellate court in each relied upon some action or actions by the trial court or the prosecutor that occurred after the trial began to find a mutual understanding. Significantly, these acts or actions not only manifested the existence of a mutual understanding of the parties, but they also demonstrated that the respective trial courts in each case actually considered in some manner the defendant's pretrial objection in the context of the evidence presented at trial. These acts include:

- The defendant requested and was granted a continuing objection. *Id.* at 715; *State v. Curtis,* 931 S.W.2d 493, 494 (Mo.App.1996) (in addition, prosecutor agreed to continuing objection); *see McWhorter,* 240 S.W.3d at 764 ("When a defendant requests a continuing objection the trial court is afforded an opportunity to determine and consider the exact nature and scope of the requested objection and the inherent problems associated with such an objection when at some point in time after the continuing objection is granted the evidence adduced at trial differs from the evidence adduced at the motion hearing regarding whether the seized evidence should be suppressed.");

- The trial court ruled on the defendant's objections during trial to some of the challenged evidence on the same ground asserted before trial. *State v. Hawkins,* 137 S.W.3d 549, 555 (Mo.App.2004)(trial court used the question, "Same objection?" directed toward defense counsel as a shorthand reference to defendant's pretrial objection); *State v. Stillman,* 938 S.W.2d 287, 290 (Mo.App.1997) (defendant renewed his objections *during* the testimony of the police officers, but announced "no objection" when the evidence seized by those officers was offered into evidence); *Curtis,* 931 S.W.2d at 494 (defendant objected to testimony offered by the first witness in accordance with his pretrial motion);

- The trial court ordered the defendant's motion to suppress to be heard along with the trial of the case and ruled on it after the presentation of all evidence

at trial. *State v. Martin,* 79 S.W.3d 912, 915 (Mo.App.2002);

● After defense counsel stated, "no objection" to the admission of the evidence, the trial court ruled on the defendant's motion to suppress, *sua sponte,* stating that it would "overlook" the failure to object. *State v. Mondaine,* 178 S.W.3d 584, 588 (Mo.App. 2005);

● During presentation of the defendant's case, the prosecutor asked to reopen his case to offer the state's exhibits into evidence, which he had neglected to do during the state's case. *Hawkins,* 137 S.W.3d at 555. The *Hawkins* court determined that "[t]he prosecutor and the trial court could have reasonably interpreted defense counsel's statement of "no objection" to mean that he had no objection to the State introducing its exhibits at that time, rather than having to reopen its case to do so." *Id.* at 556;

● The prosecutor and the defendant agreed that the testimony and exhibits admitted during the pretrial suppression hearing would be treated as trial evidence. *State v. O'Neal,* 392 S.W.3d 556, 561 (Mo.App.2013). During sentencing, defense counsel asked the trial court to confirm for the record that his objections made at the suppression hearing were also incorporated into the trial along with the agreed admission of the evidence from the suppression hearing. *Id.* at 563–64. The prosecutor stated on the record, "I think we all had assumed by incorporating we were incorporating those objections" and "I will state that the State will not rely on that defense in terms of these statements." *Id.* at 564. The trial court then confirmed on the record that defendant's objections made at the suppression hearing were deemed by it to have been trial objections and that the rulings on the suppression hearing objections were the same for those deemed trial objections. *Id.;*

● The trial court expressly considered on the record the merits of the defendant's pretrial claim as raised in defendant's timely motion for new trial with no objection from the prosecutor to the inclusion of the pretrial claim in the motion for new trial. *Baker,* 103 S.W.3d at 716; *Hawkins,* 137 S.W.3d at 556 (in addition, during hearing on the defendant's motion for new trial, the prosecutor acknowledged that it was the same claim Hawkins had raised throughout the trial).

In each of the above-referenced cases, the reviewing appellate court was satisfied or clearly found from the record that a mutual understanding existed between the trial court, the prosecutor, and the defendant that the defendant did not intend to repudiate his pretrial objection when defense counsel announced "no objection" to the admission of the evidence at trial. *Baker,* 103 S.W.3d at 717; *O'Neal,* 392 S.W.3d at 563; *Mondaine,* 178 S.W.3d at 588; *Hawkins,* 137 S.W.3d at 556; *Martin,* 79 S.W.3d at 915; *Stillman,* 938 S.W.2d at 290; *Curtis,* 931 S.W.2d at 495. We find no such satisfaction or clarity in the record before us here.

Before trial, the trial court denied Defendant's motion to suppress and his renewal of that motion. Defendant points us to only two acts occurring thereafter that he asserts support his claim of a mutual understanding as required to invoke the *Baker* "mutual understanding" exception: first, his motion for new trial included a claim of trial court error in denying his renewed motion to suppress; and, second, the prosecutor did not object to the inclusion of that claim in the motion.

As *Baker* and *Hawkins* teach, the trial court's *expressed* consideration on the record of the merits of the defendant's objection to the evidence as raised in his motion for new trial, in the absence of any objection by the prosecutor, acknowledges both the trial court's and the prosecutor's mutual understanding that the pretrial objection had not been waived by the defendant's announcement of "no objection" during trial. *Baker*, 103 S.W.3d at 716; *Hawkins*, 137 S.W.3d at 556. That is not what occurred here. Rather, here, the trial court summarily denied Defendant's motion for new trial after defense counsel demurred the proffered opportunity for argument. Such a denial is consistent with the trial court's understanding that Defendant waived any objection to the evidence by his counsel affirmatively asserting "no objection" when it was offered during the trial and that Defendant's motion for new trial on this claim should be denied for that procedural reason without any consideration of its merits. Nothing in the record indicates that the trial court excused that procedural bar and actually considered the merits of the Defendant's claim in his motion for new trial.

Defendant's second argument—that his affirmative assertion to the trial court of "no objection" during trial is somehow trumped by the prosecutor's silence on Defendant's motion for new trial—has no merit. The trial court gave Defendant the opportunity to argue his motion, and Defendant chose to remain silent on it. This is not like the situation in either *Baker* or *Hawkins*, where the trial court expressly considered the merits of the defendant's pretrial objection contained in his motion for new trial and the prosecutor failed to object to such consideration. *Id.* Here, the trial court summarily denied Defendant's motion for new trial without expressly reaching the merits of Defendant's pretrial objection to the evidence contained in that motion. Nothing in the prosecutor's silence on this motion indicates that he was doing anything other than relying upon Defendant's affirmative statement of "no objection" during trial as the basis upon which the motion of new trial should be denied by the trial court. Our acceptance of Defendant's argument would stretch the *Baker* "mutual understanding" exception beyond its logical limits, free it from virtually any evidentiary constraints, and would essentially shift to the state, in every case where the defendant asserts a pretrial objection to evidence, the burden to affirmatively assert on the record, at every possible opportunity during the trial and after, the non-existence of a mutual understanding of preservation even in the face of a defendant's affirmative assertion of "no objection" to the trial court.

A trial court is not clairvoyant, and neither are we. It is the defendant's obligation to make a sufficient record clearly showing an alleged mutual understanding by the trial court and the prosecutor of the defendant's intention to preserve a pretrial objection to evidence after he or she announces "no objection" when that evidence is offered at trial. Requiring such support in the record is not "a hypertechnical application of the requirement of renewing the objection at every stage," as Defendant suggests, quoting *Stillman*, 938 S.W.2d at 290. It is, rather, the fair and consistent application of the well-known, well-established, and easily followed general rules for orderly trial conduct and procedure.

On the record before us, the facts of this case do not fall within the narrow "mutual understanding" exception recognized in *Baker*. Defendant's announcement of "no objection" when the evidence was offered during the trial waived any appellate review of alleged error, plain or otherwise, in its admission. Defendant's first point is denied.

### Admission of SWAT Team Testimony was not an Abuse of Discretion

Defendant claims, in his second point, that the trial court abused its discretion in "admitting the testimony of the involvement of a SWAT team in the execution of the search warrant" because it violated his due process rights and denied him a fair trial, in that any probative value of that testimony was outweighed by its prejudicial impact of coloring Defendant's "character as someone dangerous enough to warrant the use of a SWAT team." We disagree.

### Applicable Principles of Review and Law

Questions of evidentiary relevance are within the trial court's discretion. *State v. Walkup*, 220 S.W.3d 748, 757 (Mo. banc 2007). On review, we will overturn the exercise of that discretion, however, if it is " 'clearly against the logic of the circumstances.' " *Id.* (quoting *State v. Forrest*, 183 S.W.3d 218, 223 (Mo. banc 2006)). Therefore, we employ an "abuse of discretion" standard of review. *State v. Primm*, 347 S.W.3d 66, 70 (Mo. banc 2011).

Evidence must be relevant to be admissible. In Missouri, the general rule is that relevance is two-tiered: logical and legal. *State v. Anderson*, 76 S.W.3d 275, 276 (Mo. banc 2002) (internal citations omitted). Evidence is logically relevant if it tends to make the existence of a material fact more or less probable. *Id.* But logically relevant evidence is only admissible if it is legally relevant. *Id.* Legal relevance weighs the probative value of the evidence against its costs— unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness. *Id.* (citing *State v. Sladek*, 835 S.W.2d 308, 314

(Mo. banc 1992)). Accordingly, logically relevant evidence is excluded if its prejudice outweighs its probative value. *State v. Anderson*, 306 S.W.3d 529, 538 (Mo. banc 2010). The prejudice in this weighing process has been referred to as "evidence-specific" prejudice. *State v. Barriner*, 34 S.W.3d 139, 150 (Mo. banc 2000).

■ Moreover, "[b]eyond questions of relevance, even where a particular evidentiary ruling is in error, appellate courts review evidentiary errors to ascertain whether they were prejudicial, that is, whether the errors are more likely than not to have affected the outcome." *Walkup*, 220 S.W.3d at 757. This has been described as "outcome-determinative" prejudice. *See, e.g., State v. Johnson*, 207 S.W.3d 24, 42 (Mo. banc 2006); *State v. Black*, 50 S.W.3d 778, 786 (Mo. banc 2001). "A finding of outcome-determinative prejudice expresses a judicial conclusion that the erroneously admitted evidence so influenced the jury that, when considered with and balanced against all evidence properly admitted, there is a reasonable probability that the jury would have acquitted but for the erroneously admitted evidence." *Black*, 50 S.W.3d at 786 (Mo. banc 2001).

### Discussion

■ Defendant filed a motion *in limine* seeking a pretrial ruling prohibiting the prosecutor from eliciting any testimony about "use of the Special Weapons and Tactical (S.W.A.T.) Team or alleged violent tendencies of the Defendant."[4] During the pretrial argument on this motion, which took fifteen of the 230 pages of the trial transcript, defense counsel told the trial court that "Officer Karr used a partial

---

4. In their briefs, the parties referred to this police unit as the "SWAT team." We will do likewise in this opinion.

SWAT team because of some alleged violent tendencies that the defendant had" and that the SWAT team used a "flash bang"[5] upon their forced entry into the residence. Defense counsel requested that the trial court prohibit any testimony about "use of the SWAT team, the flash-bang device and things like that." The trial court entered an oral pretrial order that if a SWAT team member testified, the prosecutor was allowed to elicit that he or she is from the SWAT team and that they entered the premises, but the prosecutor could not go into an "explanation of how a SWAT team decides how to enter and what they did before hand to come up with how they're going to enter in this case and why they were going to enter[.]"

During the trial, two officers from the Jasper County Sheriff's Office referenced the SWAT team during their testimony. Deputy Sergeant Chenault was examined and testified:

Q (By [the prosecutor]) Sergeant, again, for what purpose did you travel to that address that day?

A [by Deputy–Sergeant Chenault] I am a member of our agency's special weapons and tactics team. It is a specialized division in our agency to assist another deputy with execution of a search warrant.

Q And, specifically, what role were you assigned in the execution of this search warrant?

A My specific role is as the less than lethal operator as well as an entry team number.

Q Okay. On this specific day—on this specific entry can you tell me about your entry into the house?

A Once the door came open I went inside and went to the left through what appeared to be a kitchen, dining room area. This was a trailer, so it's fairly open whenever I first went in. And I continued in that direction towards [sic] a back bedroom.

Sergeant Karr was examined and testified as follows:

Q [by the prosecutor] And we've already heard testimony from Sergeant Chennault [sic] regarding the SWAT team entry in the house. What was your assigned role in the execution of the search warrant?

A [by Sergeant Karr] I was the lead investigator. I was the leading officer in the case.

\* \* \* \* \* \*

Q Sergeant, how soon after you obtained the search warrant did you begin to assemble the officers which were required for that search warrant?

A I left here, drove straight to the office and met with my—met with a patrol lieutenant. And who—I believe took me to the Captain's office to try to get a SWAT team approved.

Q And then at what time did you—how long did it take before you actually assembled that team.

Q It took an hour or so to get it approved and to contact the SWAT team leader, and to prepare for it.

Q So was there any delay after you received the search warrant between when you received the search warrant and when you began to assemble the team to execute that search warrant?

A We put the plans together and then we had a three or four-hour break because we agreed not to serve the

---

5. The trial court was not given any explanation of the nature of this device.

search warrant until after 9:00 when the night shift come on, so that the streets were covered for-for like regular calls and such.

Q Since you were not a part of the SWAT team is it correct that you were not a part of the initial entry into the house?

A No, sir. I wasn't part of the initial entry.

Q How long after the initial entry was made did you enter the house?

A It was two to three minutes, two, three to four minutes.

Q Can you describe for us the scene when you entered the residence?

A I walked in. [Defendant] was in handcuffs in a recliner in the living room. Savannah White was in handcuffs I believe on the couch and there were kids present.

\* \* \* \* \* \*

A He [referring to Defendant] was being cooperative, and he's a big guy and we ended up taking off the zip cuffs that the patrol-or that the SWAT team had and just put his hands in front of him and we also allowed him to smoke a cigarette.

After Sergeant Karr's last reference to the SWAT team, it was not mentioned again during the trial.

Defendant concedes the logical relevance of the SWAT team testimony but challenges its legal relevance because "the prejudice created by admitting the testimony referencing the use of a SWAT team greatly outweighed its probative value." In support of his claim of "evidence-specific" prejudice, Defendant argues that this testimony "does nothing except make [Defendant] appear dangerous in the eyes of the jury." This is so, Defendant asserts,

because "[s]urely members of the jury are aware that a SWAT team is not used in every execution of a search warrant[ ] but that SWAT teams are instead reserved for times when officers believe they are dealing with the most dangerous individuals[,]" and that Sergeant Karr's testimony about having to get approval to use a SWAT team "implied to the jury that people with more authority than Officer Karr also felt that it was necessary to use the SWAT team." These assertions, however, are based on nothing more than Defendant's conjecture and speculation and have no support in the record.

Nothing in the evidence before the jury indicates that the Jasper County Sherriff's Office limits in any manner the use of SWAT teams in executing search warrants or that its use is reserved by that office for only those instances where officers believe they are dealing with the most dangerous individuals. To the contrary, the challenged testimony is consistent with the inference that this office routinely uses a SWAT team to execute search warrants and that the process described by Sergeant Karr is the usual and customary procedure involved in assembling the officers responsible for such execution. Defendant points us to nothing in the evidence before the jury indicating that the SWAT team was used for any particular purpose other than the routine execution of the search warrant or that its use reflects in any manner upon Defendant's character.

Defendant has failed to persuade us he suffered any "evidence-specific" prejudice by the admission of the SWAT team testimony. In the absence of such prejudice, the trial court's admission of that testimony was not clearly against the logic of the circumstances and, therefore, was not an

abuse of the trial court's discretion.[6]  Defendant's second point is denied.

### Decision

The trial court's judgment of conviction is affirmed.

JEFFREY W. BATES, P.J. and MARY W. SHEFFIELD, J.-concur.

---

**6.**  Finding no error in its admission, we need not address Defendant's argument alleging outcome-determinative prejudice arising from its alleged improper admission.