

## MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD85259 |
| | ) | |
| BRENDA L. IVY, | ) | Filed: August 15, 2023 |
| | ) | |
| Appellant. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF LAFAYETTE COUNTY
### THE HONORABLE KELLY H. ROSE, JUDGE

**Before Division Four: Gary D. Witt, Chief Judge, Presiding,
Lisa White Hardwick, Judge, and Jalilah Otto, Special Judge**

Brenda Ivy appeals from her conviction for driving while intoxicated. She contends the circuit court erred in not allowing her expert to testify that she had been diagnosed with medical conditions that could have affected the results of her breathalyzer and field sobriety tests. For reasons explained herein, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

At 8:40 p.m. on November 29, 2019, a Missouri State Highway Patrol Trooper stopped Ivy on Interstate 70 in Lafayette County after observing her driving 96 miles per hour, which was 26 miles per hour over the speed limit. The officer asked Ivy to speak with him in his patrol car. While in the patrol car, the officer noticed a strong odor of

alcohol on Ivy's breath, so he asked if she consumed any alcohol. After initially denying that she had consumed any alcohol, she eventually admitted she had two shooters around noon that day.

Ivy declined the officer's request to submit to a portable breathalyzer test but agreed to submit to field sobriety tests. The officer first conducted the horizontal gaze nystagmus ("HGN") test. Ivy exhibited six out of six clues of intoxication. As he was conducting the HGN test, he noticed Ivy's eyes were bloodshot and glassy. The officer then asked Ivy to perform the one-leg stand test. In taking the test, Ivy exhibited clues indicating she was impaired. Based on her performance on both of these tests, the officer opined that Ivy was impaired. He again asked her to submit to a portable breath test. This time, Ivy agreed, and the test indicated she had an alcohol level above the .08% legal limit. The officer arrested Ivy and took her to the Odessa Police Department, where she consented to another breathalyzer test. The test showed that her blood alcohol content was .123%.

The State subsequently charged Ivy as a prior felony offender with the class B misdemeanor of driving while intoxicated.[1] A jury trial was held on January 10, 2022. Prior to trial, the State filed a motion in limine seeking to exclude as hearsay any out-of-court statements concerning medical conditions that Ivy disclosed to the State on January 6, 2022, four days before trial. The State noted that the only medical record that Ivy provided to the State on January 6, 2022, was an unauthenticated brain scan. The State

---

[1] The State also charged Ivy with the class B misdemeanor of exceeding the speed limit but dismissed this charge before trial.

asked to bar the admission of Ivy's medical records, limit testimony concerning any diagnoses made by a doctor to Ivy, and to bar the defense's expert from disclosing any sort of diagnoses. The State asserted that, while Ivy's expert could testify in general about how certain medical conditions affect breathalyzer and field sobriety tests, the expert could not testify that Ivy had actually been diagnosed with those conditions.

In response, Ivy argued that, even if her medical records were not admissible, her expert in the field of DWI investigation should be allowed to testify that he reasonably relied on those medical records to find that she had medical conditions that affected her breathalyzer and field sobriety tests. Specifically, Ivy asked that her expert be allowed to testify that she had gastrointestinal reflux disease ("GERD") that could have affected her breathalyzer test, a traumatic brain injury that could have affected her HGN test, and an injury to her foot that could have affected her one-leg stand test.

Again, the State countered that the medical records upon which Ivy's expert relied were not timely and properly disclosed to the State. The State noted that it had filed a Rule 25.05 motion for disclosure on August 19, 2021, and Ivy's failure to timely disclose the medical records indicating that she had these conditions deprived the State of the opportunity to review the records, to test their veracity, or to give the records to the State's expert.

When the court asked defense counsel if the records upon which Ivy's expert relied were disclosed to the State, defense counsel said she had an email that would show she had disclosed them to the State, but she was unable to find the email. The court then asked the State, "So what – what you're telling me . . . is none of these medical records

3

upon which the Defense expert is going to state an opinion were timely disclosed to you; is that correct?" The State responded, "I did not receive an email. I've double-checked. I've quadruple-checked. All we have is what was mentioned in what their expert relied on."[2] The court took the matter under advisement to research the issue and to allow defense counsel time to look for the email defense counsel said she sent to the State.

At the start of the defense's case, the court granted the State's motion finding, among other things, that the probative value of such testimony was outweighed by its prejudicial effect because the expert could not say whether Ivy was suffering from the effects of those medical conditions at the time she took the breathalyzer and field sobriety tests. Ivy made an offer of proof of the excluded evidence.

In the offer of proof, Ivy's expert testified that he was a former police officer who was currently employed as an expert witness, curriculum developer, and instructor in the field of traffic safety, including DWI enforcement and breath testing. The expert testified that he had extensive training and education in how GERD, traumatic brain injury, and ankle, feet, back, hip, and knee "conditions or injuries" can affect a person's performance on a breathalyzer test, HGN test, and one-leg stand test, respectively.

For purposes of the offer of proof, the court admitted Exhibit E, which were Ivy's records of her appointments at a bariatric clinic in 2015, 2016, and 2021, in preparation for and following bariatric surgery. The narratives of several of these appointments listed

---

[2] The colloquy between defense counsel, the State, and the court indicates that the report written by Ivy's expert mentioned that he relied on the medical records. The expert's report was not admitted into evidence, but the court reviewed the report in determining whether the expert's opinions were admissible. The expert's report was not included in the record on appeal.

GERD and ankle, feet, back, hip, and knee "pain" in Ivy's medical history section. The court also admitted Exhibit F, which was Ivy's CereScan personalized neuro-diagnostic visual supplement, dated January 2, 2019, in the offer of proof. The CereScan indicated that the primary neurologic impression was "Traumatic Brain Injury (TBI)." The expert testified that these were the types of records that experts in his field "would rely upon to verify any type of claim of injury that would affect the results of field sobriety testing" and that he relied on them to form his opinion that Ivy's medical conditions could have affected her breathalyzer and field sobriety tests.

After the offer of proof, Ivy's expert testified before the jury. Consistent with the court's ruling on the motion in limine, Ivy's counsel asked the expert if he was aware of any medical conditions that "would affect" an HGN test. The expert responded that "[t]here are a number of conditions that may affect it," including a brain injury. When asked if he was aware of any medical condition that "would affect" the results of the one-leg stand test, the expert responded that "[i]nner ear disorder, problems with leg, hip . . . would cause difficulty." Lastly, Ivy's counsel asked the expert whether he was aware of any medical conditions that "would affect" the result of a breathalyzer test, the expert replied that there were "a number of things," including GERD. The expert did not testify that Ivy had been diagnosed with any of these conditions. Instead, the expert testified that the officer's report indicates that the officer did not ask Ivy if she had any of these conditions before he administered the breathalyzer and field sobriety tests.

5

The jury found Ivy guilty of driving while intoxicated. The court sentenced her to 60 days in the Lafayette County Jail, suspended execution of the sentence, and placed her on probation for two years. Ivy appeals.

Ivy's points on appeal challenge the court's decision to exclude her expert's testimony that she had been diagnosed with the conditions listed in her medical records. The circuit court has broad discretion to admit or exclude expert testimony. *State v. Hudson*, 643 S.W.3d 679, 684 (Mo. App. 2022). We will not disturb the court's decision unless we find that the court clearly abused its discretion. *Id*. An abuse of discretion occurs when the "ruling is clearly against the logic of the circumstances then before the court, and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Id*. (citation omitted). We will affirm the court's ruling if it is "correct on any basis supported by the record and the law." *State v. Black*, 666 S.W.3d 205, 208 (Mo. App. 2023).

In her three points, Ivy contends the circuit court erred in not allowing her expert to testify that she had been diagnosed with GERD, a traumatic brain injury, and ankle, feet, back, hip, and knee issues that could have affected the results of her breathalyzer and field sobriety tests. Ivy does not challenge the court's decision to exclude the actual records from the bariatric clinic and the CereScan. Instead, she argues that, even if the medical records themselves were inadmissible, her expert could testify that she had been

diagnosed with the conditions stated in those records because the expert reasonably relied on that information to form his opinions. We disagree.

Over four months before trial, the State made a motion for disclosure under Rule 25.05 and specifically requested, pursuant to Rule 25.05(a)(1), that Ivy provide "[a]ny reports or statements of experts made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments, or comparisons, which the defense intends to introduce into evidence at a hearing or trial." Ivy's duty to disclose this information was continuing, as Rule 25.08 states that, if "a party discovers information or material that the party would have been required to disclose under the request or order, the party shall furnish this additional information or material to opposing counsel as soon as practicable."

"The purpose of the criminal discovery rules, including Rule 25.05, is to eliminate surprise by 'allowing both sides to know the witnesses and evidence to be introduced at trial.'" *State v. Walkup*, 220 S.W.3d 748, 753 (Mo. banc 2007) (quoting *State v. Whitfield,* 837 S.W.2d 503, 508 (Mo. banc 1992)). "The rules on pretrial discovery aid the truth-finding aspect of the legal system." *Whitfield*, 837 S.W.3d at 508. While "important evidence may be discovered at the last minute," the circuit court's primary concern is to be "fundamentally fair to each party." *Id*.

The medical records that Ivy's expert relied on to form his opinions do not appear to have been discovered by Ivy at the last minute. The bariatric clinic records stating that Ivy had GERD and had ankle, feet, back, hip, and knee issues were created as early as June 2015, and the CereScan stating an impression of a traumatic brain injury was

7

created on January 2, 2019. The transcript shows that Ivy's expert prepared a written report in which he mentioned the records. Yet, no medical records were discussed during the pretrial conference on Wednesday, January 5, 2022. Instead, on January 6, 2022, four days before the trial was to begin on Monday, January 10, 2022, Ivy disclosed to the State that she had been diagnosed with these medical conditions and provided the unauthenticated CereScan, but not the bariatric clinic records, to the State. Indeed, the transcript indicates the State never received the bariatric clinic records from Ivy. Because Ivy's expert relied on both the CereScan and bariatric clinic records as the basis of his opinion that Ivy had been diagnosed with these medical conditions and that these conditions affected her breathalyzer and field sobriety tests, Ivy had a continuing duty to disclose the records to the State "as soon as practicable." Rules 25.08; 25.05. Providing one unauthenticated record concerning one of three alleged medical conditions on the Thursday before a Monday trial date was not "as soon as practicable." As the State argued to the court, Ivy's failure to timely disclose the medical records upon which her expert relied deprived the State of the opportunity to review the records, to test their veracity,[3] and to give the records to the State's expert.

Under these circumstances, it would have been fundamentally unfair to the State to allow Ivy's expert to testify that she had been diagnosed with the medical conditions stated in the records. It was not, however, fundamentally unfair to Ivy to exclude such

---

[3] In finding that the records lacked the indicia of reliability necessary to form the basis of the expert's opinion, the circuit court noted that the records merely stated that Ivy had these conditions and did not indicate how or when she was diagnosed or who diagnosed her.

testimony. The court allowed Ivy's expert to testify that GERD would affect the results of a breathalyzer test, a traumatic brain injury would affect the results of an HGN test, and leg and hip problems would affect the results of the one-leg stand test. The court also allowed Ivy's expert to testify that the officer who stopped Ivy failed to ask her if she suffered from any of these conditions before he administered the breathalyzer and field sobriety tests. This was a fair response to Ivy's untimely disclosure of the medical records upon which her expert based his opinion. The circuit court did not abuse its discretion in excluding the expert's testimony that Ivy had been diagnosed with GERD, traumatic brain injury, and ankle, feet, back, hip, and knee issues. While the circuit court's decision to exclude the testimony focused primarily on the testimony's unreliability, both the record and the law support affirming the court's ruling on this alternative basis. Points I, II, and III are denied.

## CONCLUSION

The judgment is affirmed.

_____
LISA WHITE HARDWICK

All Concur.

9