

# In the
# Missouri Court of Appeals
# Western District

| | |
|---|---|
| TRAVONE SHAW, | ) |
| | ) |
| Appellant, | ) WD83935 |
| | ) |
| v. | ) OPINION FILED: November 30, 2021 |
| | ) |
| STATE OF MISSOURI, | ) |
| | ) |
| Respondent. | ) |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Joel P. Fahnestock, Judge

Before Division Four:  Cynthia L. Martin, Chief Judge, Presiding, Anthony Rex Gabbert, Judge and Thomas N. Chapman, Judge

Travone Shaw ("Shaw") appeals from the motion court's denial of his Rule 29.15[1] post-conviction motion.  Shaw asserts that the motion court committed clear error because his trial counsel was ineffective for failing to request that the instruction for involuntary manslaughter be amended to include a "reasonable juvenile" standard for assessing whether

---

[1]All rule references are to the Missouri Supreme Court Rules (2018), as applicable at the time Shaw's *pro se* motion for post-conviction relief was filed, unless otherwise indicated.

Shaw could have foreseen that the victim would have been killed as a result of his conduct. Finding no error, we affirm.

**Factual and Procedural History**

Shaw was charged with murder in the second degree, robbery in the first degree, and two associated counts of armed criminal action. At trial, the evidence established that, on October 30, 2014, Shaw and Antonio Golston ("Golston") met Dionte Greene ("Greene") to buy marijuana. The three men first went to a gas station. Surveillance footage from the gas station showed that Greene was driving a gold sedan, and Shaw was sitting in the front passenger seat of the car. Shaw exited the car and entered the gas station, where he unsuccessfully attempted to withdraw money from an ATM. Shaw returned to the vehicle, and Greene drove the car from the gas station to a known drug house. Police officers present in the neighborhood heard gunshots and then saw a gold sedan with its lights on and engine running parked in front of the known drug house. The officers surveilled the house and car for thirty minutes, then left the area after seeing no activity.

The police officers returned approximately three and a half hours later in response to a call concerning a suspicious vehicle. The officers found the same gold sedan with its engine still running and lights still illuminated. The officers approached the vehicle and saw Greene sitting in the driver's seat, slumped over the center console, deceased. An autopsy revealed that the cause of Greene's death was a gunshot to the head. Stippling on Greene's skin indicated that the gun was approximately one to three feet away from his head at the time it was fired.

2

The jury found Shaw guilty of the lesser included offense of involuntary manslaughter, the lesser included offense of felony stealing, and the two associated counts of armed criminal action. Shaw appealed, and pursuant to *State v. Bazell*, 497 S.W.3d 263 (Mo. banc 2016), and its progeny, we vacated the judgment insofar as it entered convictions and sentences for felony stealing and an associated count of armed criminal action. *See State v. Shaw*, 541 S.W.3d 681, 687 (Mo. App. W.D. 2017). We remanded with instructions to enter a judgment convicting Shaw of misdemeanor stealing and for resentencing. *Id.* In all other respects, we affirmed the judgment. *Id.* at 694. Shaw did not appeal the judgment entered on remand.

Pursuant to Rule 29.15, Shaw filed a timely *pro se* motion for post-conviction relief on May 16, 2018. On May 25, 2018, the motion court appointed counsel and afforded a thirty-day extension to file an amended motion. Appointed counsel timely filed an amended motion ("Amended Motion") on August 23, 2018. The Amended Motion argued that Shaw's trial counsel provided ineffective assistance of counsel in that she "fail[ed] to request a reasonable juvenile standard when instructing the jury on involuntary manslaughter, under accomplice liability theory." The Amended Motion asserted that, because Shaw was seventeen at the time he and Golston planned the robbery of Greene, Shaw's "neurological and psychological development . . . did not permit [Shaw] to deploy the same reasoning and rational reflection as an adult would," and that Shaw's ability "to reasonably foresee the homicide resulting from the planned theft . . . is the standard that should have been applied in this case." The Amended Motion further asserted that, had the

3

jury been required to consider the limitations of a juvenile's brain development, it would not have found Shaw guilty of involuntary manslaughter under accomplice liability.

The trial court held an evidentiary hearing on January 31, 2020. The parties agreed at the hearing that Shaw was eighteen years old at the time the crimes were committed, not seventeen years old as alleged in the Amended Motion.

Dr. Marilyn Hutchinson ("Dr. Hutchinson"), a psychologist who completed a psychological evaluation of Shaw while the Amended Motion was pending, testified that while Shaw was eighteen and a half on October 30, 2014 (the day of his crimes), he was not emotionally eighteen years old and instead "was probably really [sixteen]." Dr. Hutchinson testified that, because Shaw had the brain of an adolescent, Shaw was much less likely to evaluate the situation and its implications before acting, much less likely to restrain his impulses and exercise self-control, and much less likely to consider other possible actions to take. According to Dr. Hutchinson, Shaw's immaturity made him more likely to agree to participate.

Shaw also presented testimony from his trial counsel at the evidentiary hearing. Shaw's trial counsel testified that she had never heard of using a reasonable juvenile standard in a verdict director.

The motion court issued its findings of fact, conclusions of law, and judgment ("Judgment") denying the Amended Motion on June 16, 2020. The Judgment rejected Shaw's theory that a reasonable juvenile standard should have been included in Instruction No. 26, which had been modeled after the Missouri Approved Instruction-Criminal ("MAI-CR") for involuntary manslaughter and modified pursuant to the MAI-CR for accomplice

4

liability. Thus, the Judgment concluded that, even if trial counsel had requested a reasonable juvenile standard, she would have been requesting a modification to the verdict director that did not comply with the law, and that failing to request a verdict director that did not comply with the law did not render counsel's assistance deficient. The Judgment further concluded that, even if trial counsel's failure to request a modification to the MAI-CR constituted ineffective assistance of counsel, Shaw suffered no prejudice because it is unlikely that the trial court would have deviated from the required MAI-CR jury instructions.

Shaw appeals.

## Standard of Review

Our review of the motion court's denial of a Rule 29.15 post-conviction motion is "limited to a determination of whether the findings and conclusions of the [motion] court are clearly erroneous." Rule 29.15(k). "A judgment is clearly erroneous when, in light of the entire record, [we are] left with the definite and firm impression that a mistake has been made." *Webber v. State*, 628 S.W.3d 766, 770 (Mo. App. W.D. 2021) (quoting *Morrison v. State*, 619 S.W.3d 605, 609 (Mo. App. W.D. 2021)).

## Analysis

Shaw's single point on appeal argues that the Judgment's denial of his Amended Motion was clearly erroneous because his trial counsel failed to act as a reasonably competent attorney when she did not request that the verdict director for involuntary manslaughter include a "reasonable juvenile" standard for assessing whether Shaw could

5

have reasonably foreseen that Greene would be killed as a result of Shaw's criminal course of conduct. Shaw's point on appeal further asserts that a reasonable probability exists that, had trial counsel requested that the verdict director for involuntary manslaughter include a "reasonable juvenile" standard, the result of the trial would have been different.

The standard for evaluating claims of ineffective assistance of counsel was announced in *Strickland v. Washington*, 466 U.S. 668 (1984). *Webber*, 628 S.W.3d at 770. To successfully establish that he was deprived of his right to effective assistance of counsel, Shaw had the obligation to prove by a preponderance of the evidence both that: "(1) 'his . . . counsel failed to exercise the level of skill and diligence that a reasonably competent counsel would in a similar situation'; and (2) 'he . . . was prejudiced by that failure.'" *Id.* (quoting *Kelley v. State*, 618 S.W.3d 722, 731 (Mo. App. W.D. 2021)). The first prong, referred to as the performance prong, "requires the movant to overcome the strong presumption that his trial counsel's actions were reasonable and effective." *Id.* The second prong, referred to as the prejudice prong, "requires the movant to establish that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Kelley*, 618 S.W.3d at 732). If Shaw failed to prove either the performance prong or prejudice prong, then we need not address the other. *Id.*

It is the duty of the trial court to "instruct the jury in writing upon all questions of law arising in the case that are necessary for their information in giving the verdict." Rule 28.02(a). If there is an applicable verdict director found in the Missouri Approved Instructions-Criminal or its Notes on Use, the MAI-CR instruction must be given "to the

6

exclusion of any other instruction." Rule 28.02(c). If an instruction found in the MAI-CR or its Notes on Use conflicts with the substantive law, however, it is not binding. *State v. Celis-Garcia*, 344 S.W.3d 150, 158 (Mo. banc 2011).

Shaw's claim of ineffective assistance of counsel is premised on his belief that Instruction No. 26, which was modeled after MAI-CR 3d 313.10, and modified by MAI-CR 3d 304.04, conflicted with decisions from the Supreme Court of the United States that recognize that adolescents must be treated differently under the law than adults because an adolescent's brain is less capable of foreseeing consequences than the adult brain. Instruction No. 26 instructed the jury that, if it did not find Shaw guilty of murder in the second degree, it must consider whether Shaw was guilty of involuntary manslaughter in the first degree. Instruction No. 26 provided:

> If you find and believe from the evidence beyond a reasonable doubt:
>
> First, that on or about October 31, 2014, in the County of Jackson, State of Missouri, Antonio Golston caused the death of Dionte Greene by shooting him, and
>
> Second, that Antonio Golston recklessly caused the death of Dionte Greene by shooting him,
>
> then you are instructed that the offense of involuntary manslaughter in the first degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:
>
> Third, that with the purpose of promoting or furthering the commission of that involuntary manslaughter in the first degree, the defendant acted together with or aided Antonio Golston in committing the offense,
>
> then you find the defendant guilty under Count III of involuntary manslaughter in the first degree.

7

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of involuntary manslaughter in the first degree.

In determining whether Antonio Goldston recklessly caused the death of Dionte Greene, you are instructed that a person acts recklessly as to causing the death of another person when there is a substantial and unjustifiable risk he will cause death and he consciously disregards that risk, and *such disregard is a gross deviation from what a reasonable person would do in the circumstances*.

(Emphasis added.) In his Brief, Shaw argues that the emphasized language in Instruction No. 26 should have been modified to read "such disregard is a gross deviation from what a reasonable juvenile would do in the circumstances."

There are several issues with Shaw's contention. First, Shaw's Amended Motion did not suggest that this modification to Instruction No. 26 should have been requested by trial counsel. In fact, the Amended Motion suggested no proposed modification to Instruction No. 26, leaving the motion court to speculate precisely what it was that trial counsel failed to do. *See Cooper v. State*, 621 S.W.3d 624, 630 (Mo. App. W.D. 2021) ("[A]ny allegations or issues that are not raised in the [post-conviction] motion are waived on appeal." (quoting *McLaughlin v. State*, 378 S.W.3d 328, 340 (Mo. banc 2012))).

Second, the proposed modification to Instruction No. 26 now urged by Shaw would not have accomplished his stated objective, as it appears in a paragraph of the verdict director addressing whether *Golston* acted recklessly. There is no indication in the record that Golston was a juvenile on the date of the commission of the crimes. And even if he were, Golston's developmental level was not addressed in the evidence presented to the motion court.

8

Third, Shaw cites no authority for the proposition that the age of an accomplice implicates how the jury should be instructed with respect to the essential elements of a crime. Shaw correctly alleges that he could only be found guilty under accomplice liability for the crimes he could have reasonably anticipated would be a part of the course of criminal conduct.[2] *See Shaw,* 541 S.W.3d at 688 (Shaw's direct appeal). But Shaw extrapolates from this settled principle that the jury must be instructed to consider his age or mental acuity in determining what he could or should have reasonably anticipated.[3] Shaw cites no authority for this proposition and has not explained his inability to do so. *See State v. Hudson*, 626 S.W.3d 800, 805 (Mo. App. W.D. 2021) ("When an appellant cites no authority and offers no explanation why precedent is unavailable, appellate courts consider the point waived or abandoned." (quoting *State v. Conaway*, 912 S.W.2d 92, 95 (Mo. App. S.D. 1995))).

Fourth, though Shaw relies on United States Supreme Court cases that recognize a juvenile's brain is not as developed as an adult's, these cases address whether the penalty imposed for a crime violates the Eighth Amendment's prohibition against cruel and unusual punishment. They do not hold or suggest that a juvenile being tried as an adult should be

---

[2]On direct appeal, we addressed whether it was reasonable for Shaw to have anticipated the reckless killing of Greene. *Shaw*, 541 S.W.3d at 688. We held that because Shaw admitted to police that he knew Golston intended to rob Greene and because the evidence at trial permitted the inference that Shaw aided Golston in setting up the meeting with Greene, there was evidence that Shaw participated in a course of conduct with Golston to rob Greene, and that it was reasonable for Shaw "to anticipate that a joint criminal enterprise to forcibly rob another may involve reckless conduct resulting in death and may involve the use of a dangerous instrument or deadly weapon." *Id.* at 688-89.

[3]Shaw's contention borders on an argument of diminished capacity, "a special negative defense which negates the existence of a required culpable mental state." *State v. Walther*, 581 S.W.3d 702, 707 (Mo. App. E.D. 2019) (citing *State v. Walkup*, 220 S.W.3d 748, 754-55 (Mo. banc 2007)). However, the special negative defense of diminished capacity can only be instructed when evidence supports a conclusion that the defendant suffered from a mental disease or defect as defined by section 552.010. *Id*. at 707-08 (citations omitted). Shaw does not contend that his age or mental acuity qualify as a mental disease or defect pursuant to section 552.010.

9

relieved of criminal responsibility, or held to a different standard in determining criminal responsibility, than an adult. *See, e.g.*, *Roper v. Simmons*, 543 U.S. 551 (2005) (holding that the Eighth Amendment's prohibition against cruel and unusual punishment forbids the imposition of the death penalty on offenders who were under the age of eighteen when their crimes were committed given juveniles' propensity to make "impetuous and ill-considered actions and decisions," propensity to be "more vulnerable or susceptible to negative influences and outside pressures," and still developing personality traits, all of which are a result of brains that are not yet fully developed); *Graham v. Florida*, 560 U.S. 48 (2010) (holding that the Eighth Amendment's prohibition against cruel and usual punishment forbids the imposition of a sentence of life imprisonment without the possibility of parole on offenders who were juveniles when their crimes were committed and who did not commit homicide given the continued consensus that juveniles' brains are less developed that those of adults); *Miller v Alabama*, 567 U.S. 460 (2012) (holding that the Eighth Amendment's prohibition against cruel and usual punishment forbids a sentencing scheme that mandates imposition of life without the possibility for parole for those offenders who were under the age of eighteen when they committed a homicide given such a scheme "precludes consideration of . . . chronological age and its hallmark features--among them, immaturity, impetuosity, and failure to appreciate risks and consequences"). Shaw's argument conflates the policy considerations that have led our General Assembly to differentiate between "children" and "adults" in connection with determining whether a

juvenile criminal offender can be tried as an adult. *See* section 211.071[4] (addressing certification of a juvenile for trial as an adult, and addressing factors to be considered, including the age of the child, and the sophistication and maturity of the child). But no authority supports further expansion of that policy to require modification of the essential elements of a crime to account for the young age of an offender if the offender is otherwise appropriately being tried as an adult.

Accordingly, we reject Shaw's assertion that trial counsel provided ineffective assistance of counsel by failing to seek a modification of Instruction No. 26 to inject a reasonable juvenile standard. Any such request would have been inconsistent with the law. *See* Rule 28.02(c). Trial counsel cannot be deemed ineffective for failing to request a jury instruction that the trial court could not have given. *Cf. Barton v. State*, 432 S.W.3d 741, 754 (Mo. banc 2014) (holding counsel is not ineffective for failing to make a nonmeritorious objection). The motion court did not clearly err in denying the Amended Motion.

Shaw's point on appeal is denied.

## Conclusion

The Judgment is affirmed.

_Cynthia L. Martin_
Cynthia L. Martin, Judge

All concur

---

[4]All statutory references are to RSMo 2000, as supplemented through October 30, 2014, unless otherwise indicated.

11