LEVIN v. HILLIARD et al.

No. 43379.

Supreme Court of Missouri.

Division No. 1.

April 12, 1954.

Charles F. Hamilton, J. C. Jaeckel, Moser, Marsalek, Carpenter, Cleary & Carter, St. Louis, for appellants.

John Grossman, J. S. Gollub, St. Louis, for respondent.

COIL, Commissioner.

Plaintiff-respondent sought $25,000 as damages for personal injuries sustained as a result of defendants' alleged negligence. After verdict and judgment for defendants-appellants, the trial court sustained plaintiff's new trial motion for the reason: "That the Court erred in permitting the defendant to testify in reference to his opinion as to the cause of the collapse of the porch involved in the evidence for the reason that the defendant was not qualified to give such opinion." Defendants appealed from the order and contend that the trial court did not err in admitting the testimony and, alternatively, that error, if any, was cured by plaintiff's cross-examination.

Defendants owned a four-family flat, with up and downstairs wooden porches at the rear. The floor of the upper porch collapsed while plaintiff was on it, causing her to fall to the floor of the lower porch. Plaintiff's instruction, submitting her case, required the jury to find that the braces and supports of the porch had become so rotten and decayed that they caused the porch to collapse, and that defendants knew, or by the exercise of ordinary care could have known, of such condition in time to have repaired, but negligently failed to do so. Defendants' verdict-directing instruction told the jury in effect that, even though the jury found that the porch collapsed by reason of the failure of the supports and braces referred to in plaintiff's instruction, if it further found that the conditions mentioned in plaintiff's instruction could not have been discovered by defendants prior to the accident by the exercise of ordinary care, the verdict should be for defendants.

Plaintiff adduced evidence that the porch collapsed while she was on it; that she sustained injuries; that the boards of the upper porch floor and some of the stringers and supports were rotten and decayed; and that defendants had notice thereof in time to have repaired. Defendants' evi-

dence was to the effect that the braces and supports were not rotten and decayed, at least to the degree described in plaintiff's evidence, but that any conditions which could have contributed to the collapse of the porch were concealed by molding or trim boards and that defendants did not and could not in the exercise of ordinary care have discovered such causative conditions. Defendants' further evidence was to the effect that the original construction of the porch was such that the strain of continued use upon certain nails (inadequate as support) and the subsequent shearing or breaking of those nails was the cause of the porch's collapse, and that the method and manner of the construction of the porch was not discernible to defendants until examination following the accident.

The porch had been in existence for at least 36 years and no structural repairs had been made since 1932 (the nature of the 1932 repairs does not appear). Defendant Ralph Hilliard, assisted by his father-in-law, Mr. Milner, dismantled the porch after the instant accident and constructed a new porch. The construction of the original upper porch, as discovered by defendant Ralph Hilliard subsequent to the accident, is accurately described by appellant as follows: "The second floor porch was constructed in this manner: three boards, or stringers, each 16' x 2" x 8" extended north and south, one of them abutted the wall, one was at the outer extremity and the third was centrally located between the other two, all being placed so that the 8" dimensions were vertical. The north ends of the stringers were attached, by nails, to a board 48" x 2" x 8", which extended east and west, and the south ends were attached, by nails, to a board of like dimensions and direction. Those nails were about 6" long and 3/16" in diameter and had been driven through the end pieces and into the ends of the stringers. The east end of each of the end pieces extended into the brick wall about 6". Those end pieces and the outside stringers were covered on the outside by trim boards. A wedge, or block, consisting of a piece of wood 6" x 2" x 6", had

been inserted in the brick wall of the building midway between the ends of the stringer abutting the wall and that stringer was attached to that wedge by nails. There was a piece of 2 x 8, extending east and west, attached between the stringer at the outer extremity and the center one, and a piece of like material between the center stringer and the one abutting the wall, both pieces being at the center of the porch. The outer stringer rested upon three upright square wooden posts located at the ends and center of it. The lower ends of those posts rested upon the floor of the lower porch. The floor boards and the boards of the ceiling of the first floor porch extended east and west and were attached to the three stringers, their ends being flush with the brick wall, and concealed the stringers from view. There was a quarter-round molding around the sides and ends of the ceiling of the first floor porch." And there may have been such a molding on the second-floor porch.

After the accident, defendant Ralph Hilliard said he determined: that the nails which had secured the stringer (which abutted the rear brick wall) to the cross-piece at the north end of the porch had sheared or broken in half and were somewhat rusted; that the north end of the stringer was somewhat deteriorated; and that the nails by which the stringer was attached to the "block or wedge" did not break but were rusty and pulled out of the block because of the leverage exerted against them when the anchorage at the one corner gave way; that the block remained in the wall; and that the other corner of the porch did not give way. When Ralph Hilliard and his father-in-law reconstructed the porch, they placed upright supports or posts at the corners of the porch abutting the brick wall. These posts or supports, as heretofore noted, had not been included when the porch was originally constructed.

Defendant Ralph Hilliard, on direct examination, was asked: "Now, Mr. Hilliard, with reference to the construction of that porch, do you have an opinion as to what caused this porch to fall?" Plaintiff ob-

jected that the question called for a conclusion, and that the witness had not been properly qualified. Hilliard was permitted to answer: "I don't think that the porch that went down was constructed properly, I think it lacked some support, quite a bit."

■ Defendants first contend that, despite the fact that the question was so framed as to call for an opinion, the witness' answer "was based upon his personal observation and constituted a statement of fact and not the expression of a mere opinion." Cases are cited which support the proposition that, even though a question may be objectionable in form as calling for a conclusion or an opinion, if the answer given is in reality simply a statement of fact based upon what the witness himself observed, the answer is thereby not an opinion or conclusion. The difficulty with defendants' position, however, is that the answer of the witness in the instant case was an opinion or conclusion as to the cause of the collapse of the porch and not a statement of a fact based upon his personal observation. We think that the witness' answer reasonably construed in the light of his prior testimony was, in effect, this: Based upon my examination of the porch after it collapsed and based upon my discovery as to the manner in which the porch had been constructed, I concluded that it fell, not because of any rotten or decayed supports, but because originally the porch had been improperly constructed in that it had no supporting posts at the corners abutting the brick wall. This, in our view, was an opinion or conclusion and not a statement of fact.

Defendants argue further, in support of their first contention, that "The fact the outer extremity of the porch, which was supported by uprights, did not collapse, is conclusive proof that the portion abutting the building wall, the portion which did collapse, was not properly constructed and supported." From all the testimony, it perhaps was a reasonable jury conclusion that a cause of the collapse was the absence of upright supports at the corners which abutted the brick wall. But the fact of the manner of the collapse, in view of plaintiff's evidence as to the rotten and decayed condition of the supports and braces, was not "conclusive proof" that the absence of supports at the places indicated was the sole cause of the collapse, nor was it "conclusive proof" that the porch had been improperly constructed.

■ Defendants contend that if the answer of the witness, as we have held, was a conclusion or an opinion, the witness was sufficiently qualified to state his conclusion or opinion. Defendants point to these facts to support their contention that Hilliard was qualified: that the witness had testified in a deposition (much of which was read in evidence by plaintiff) as to the details of the construction of the porch; that he had the ability at the time of the deposition to draw and did draw a rough sketch of the basic construction of the porch (plaintiff's Exhibit 1); that he and his father-in-law had constructed a new porch; and that certain cross-examination by plaintiff's counsel demonstrated the witness' qualifications. The cross-examination referred to was this:

"Q. Now, you made some statement that in your opinion you thought that the collapse of this porch was faulty construction, you stated that to be your opinion, didn't you? A. Yes.

"Q. And that opinion was based upon your experience, I assume, in connection with the type of material and the work? A. Will you repeat that again?

"Q. Your opinion was based upon your experience, or your knowledge, or information, pertaining to it? A. Pertaining to it, yes."

We can discover nothing in the matters suggested by defendants which qualified the witness to give his opinion that improper construction caused the porch to fall. He was not shown to have had any prior experience in the construction of similar porches or any experience in construction generally. It was not shown that witness had had any theoretical training, or that he had done any research which

would qualify him to authoritatively determine what was or was not proper construction of a porch similar to the one involved. And there was nothing in the cross-examination which tended to supply otherwise absent qualifications. The effect of the cross-examination was simply to demonstrate that the witness' answer was based upon whatever knowledge or information pertaining to that particular porch the defendant had acquired by reason of his examination of it after the accident and from his experience in constructing a new porch. The fact that witness thought upright supports were needed at the corners abutting the brick wall did not qualify him to express an opinion that the absence of such supports meant that the original porch (which had stood for at least 36 years) was improperly constructed.

█ Defendants contend that in any event plaintiff's counsel, on cross-examination, "went beyond the witness' testimony, admitted over objection * * * and thereby cured any error, if such there was, in permitting Hilliard to answer the question to which objection had been made." The portion of the cross-examination pointed to is this: "Q. What was the real cause of this porch collapsing? A. The nails sheared. Q. The nails broke off? A. Yes, sir." Defendants cite several cases, both from Missouri and other jurisdictions. We have examined each of them and note that none of the Missouri cases cited supports this proposition. Some of the cases from other jurisdictions do support defendants' contention, but those cases are contrary to the Missouri rule pertaining to the instant question. "There are cases holding that objections to testimony are waived when the objecting party on cross-examination subsequently goes into the same matter, but this is clearly contrary to the weight of authority. It would indeed be a strange doctrine, and a rule utterly destructive of the right and all the benefits of cross-examination, to hold a litigant to have waived his objection to improper testimony because, by further inquiry, he sought on cross-examination to break the force or demonstrate the untruthfulness of the evidence given in chief, in the event, as would most usually occur, that the witness should on his cross-examination repeat or restate some or all of his evidence given on his direct examination." 53 Am.Jur., Trial, § 143, p. 128; Barker v. St. Louis I. M. & S. Ry. Co., 126 Mo. 143, 151[2], 28 S.W. 866, 867[2]; O'Shaughnessy v. Rogers, Mo.App., 202 S.W.2d 92, 96 [10, 11].

█ That the trial court determined that the erroneously admitted testimony was prejudicial is shown by the fact that the trial court sustained plaintiff's motion for new trial; otherwise, it was not justified in setting aside defendants' verdict. Phillips v. Vrooman, Mo.Sup., 251 S.W.2d 626, 629–30[1]. Thus, even though we might believe the error was insufficient to reverse the judgment if the motion for new trial had been overruled, we recognize the position of the trial court to better determine the effect of the erroneously admitted testimony. And we may not say on the record before us that the testimony was wholly immaterial and thus demonstrably not prejudicial. This, for the reason that as heretofore noted, in order to return a verdict for plaintiff, the jury had to find that the porch fell because its braces and supports had become rotten and decayed. Thus, if the jury found that the porch fell, not because the braces and supports were decayed, but because it was originally improperly constructed, then, under the instruction, it could not find for plaintiff.

It follows that the trial court's order granting a new trial should be and it is affirmed.

VAN OSDOL and LOZIER, C.C., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.