STATE of Missouri, Respondent,

v.

Patrick JONES, Appellant.

No. ED 97121.

Missouri Court of Appeals,
Eastern District,
Division One.

June 19, 2012.

Ellen H. Flottman, Columbia, IL, for appellant.

Chris Koster, Atty. Gen., Karen L. Kramer, Jefferson City, MO, for respondent.

CLIFFORD H. AHRENS, Presiding Judge.

Patrick Jones ("Defendant") appeals from the judgment of the trial court entered after a jury convicted him of two counts of statutory sodomy in the first degree, two counts of child molestation in the first degree, one count of statutory rape in the second degree, and one count

of statutory sodomy in the second degree, and sentenced him to concurrent terms of imprisonment of thirty years, thirty years, fifteen years, fifteen years, seven years, and seven years. We affirm in part and reverse in part.

Viewed in the light most favorable to the judgment, the facts are as follows. TR was born in August 1994. In May 2008 Defendant, the boyfriend of TR's mother, moved in with her family. TR initially slept in the basement. Approximately one week after the move, Defendant went to the basement where TR was sleeping and placed his hand under her bra, felt her breasts, pulled off her shorts, rubbed her vagina with his hand, and rubbed her vagina with his penis. Defendant threatened her and her family if she told anyone. Similar incidents happened in 2008 and 2009, even after TR moved upstairs and shared a bedroom with her sister. After TR's fourteenth birthday, Defendant put his mouth on her vagina, and penetrated her with the head of his penis. TR never told her mother because she assumed that her mother would not believe her as her mother seemed to favor Defendant over TR in disputes. TR eventually told her friend, Regina, about the incidents with Defendant. Regina advised her to tell her mother, and later, suggested that TR tell a counselor at her school.

During the week of Thanksgiving 2009, Regina told a school counselor, Carol Robinson ("Counselor") that a friend of hers had a secret. Counselor said that the secret should be shared if it was of a serious nature, and if Regina was uncomfortable with sharing it, to encourage her friend to do so. Regina left and later returned to Counselor with TR. Counselor began asking questions of TR, about whether someone hit her, or made her feel uncomfortable. TR told her that it was her mother's boyfriend. Counselor asked if Defendant had sex with her, at which point TR nodded her head and began to cry. Counselor reported the matter to her administrator.

Detective Harolton Clayborn of the St. Louis County Police contacted TR's mother, and attempted to contact Defendant. Defendant was arrested, and after reading him his *Miranda* rights, Defendant acknowledged that he understood by initialing and signing the *Miranda* rights form. Defendant did not request an attorney. During the questioning, Defendant admitted that one time he was intoxicated and touched TR's breast in her bedroom. Under continued questioning, Defendant began to cry and admitted to two other occasions when he went into TR's bedroom and touched her breast. He denied other acts. Defendant stated to Detective Clayborn that he was tired of talking and wanted to leave, at which point Detective Clayborn asked him if he would reduce his statement to writing or if he would give an audio tape. Defendant gave a written statement. Defendant's written statement was that on about three occasions, he was intoxicated by marijuana and alcohol and went into TR's bedroom by mistake, and feeling on what he thought was his side of his bed for TR's mother, he realized he was feeling TR's breasts. Prior to trial, Defendant filed a motion to suppress his written statement, which the trial court denied.

At trial, TR, Regina, Counselor, and Detective Clayborn testified, and the State introduced a number of exhibits, including Defendant's written statement, Exhibit 4. Defendant objected to the admission of Exhibit 4, but the trial court overruled his objection. The jury convicted Defendant on all six counts.

Defendant now appeals.

In his first point relied on, Defendant contends that the trial court erred in denying his motion for judgment of acquittal as to Count II because this ruling violated his rights to due process in that there was insufficient evidence to sustain the trial court's finding of guilt on statutory sodomy in the first degree as it was charged and instructed since the evidence failed to establish beyond a reasonable doubt that he put TR's hand on his penis.

Appellate review of a challenge to the sufficiency of the evidence supporting a criminal conviction is limited to a determination of whether sufficient evidence was presented at trial from which a reasonable juror might have found the defendant guilty of the essential elements of the crime beyond a reasonable doubt. *State v. Gibbs,* 306 S.W.3d 178, 181 (Mo.App. E.D. 2010). The court accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence and disregards all evidence and inferences to the contrary. *State v. Chaney,* 967 S.W.2d 47, 52 (Mo. banc 1998). The appellate court does not weigh the evidence or decide the credibility of the witnesses, but defers to the trial court. *State v. Blankenship,* 830 S.W.2d 1, 16 (Mo. banc 1992).

The State concedes that Defendant is correct on this claim of error because there was no evidence presented that Defendant put TR's hand on his penis. Our review of the record indicates an absolute dearth of such evidence. Point sustained.

In his second point relied on Defendant argues that the trial court erred by abusing its discretion in overruling his objections to the testimony of Counselor and Regina about what TR told them because this violated his right to confrontation and his due process right to a fair trial in that this testimony was inadmissible hearsay. He avers that he was prejudiced because the jury might not have believed TR's testimony standing alone in that she had motivation to lie.

Hearsay is an out of court statement that is used to prove the truth of the matter asserted, and it is generally inadmissible unless it comes within one of the recognized exceptions to the rule. *State v. Skillicorn,* 944 S.W.2d 877, 884 (Mo. Banc 1997). However, even if hearsay evidence was admitted improperly, a conviction will be reversed only if the defendant can prove prejudice. *State v. Steele,* 314 S.W.3d 845, 850 (Mo.App.2010). Error is prejudicial where there is a reasonable probability that it affected the outcome of the trial. *Id.* Hearsay is generally inadmissible because the person who made the statement being offered is not under oath or subject to cross-examination. *Id.* Accordingly, there is no prejudice where the declarant testified at trial on the same matter, and was subject to cross-examination because the principal defects in hearsay testimony are alleviated. *Id.* (*citing State v. Forrest,* 183 S.W.3d 218, 224 (Mo. Banc 2006) and *State v. Robinson,* 484 S.W.2d 186, 189 (Mo.1972)).

In the present case TR was a witness at trial, and testified about her conversations with Counselor and Regina, and was subject to cross-examination. Accordingly, assuming *arguendo* that the testimony at issue was inadmissible hearsay and improperly admitted, the evidence was not prejudicial to Defendant and did not deny him of the right to a fair trial or implicate the Confrontation Clause. *See id.* at 850–51; *see also State v. Reed,* 334 S.W.3d 619, 624 (Mo.App.2011). Point denied.

In his third point relied on Defendant asserts that the trial court erred in admitting his written statement into evidence over his objection. He avers that admission of the written statement violat-

ed his privilege against self-incrimination because he told Detective Clayborn that he did not want to talk anymore, but Detective Clayborn did not end the interrogation but rather asked him if he wanted to write out a statement or make a taped one.

 In reviewing a trial court's ruling on a motion to suppress evidence, we will sustain the trial court unless there is insufficient evidence to support the rulings. *State v. Clemons,* 946 S.W.2d 206, 218 (Mo. banc 1997). We view the evidence and reasonable inferences therefrom in the light most favorable to the ruling of the trial court. *Id.* Regarding the claim that Defendant invoked his *Miranda* right to remain silent, *Miranda* contemplates situations where there may be some question whether or not a defendant wishes to assert such rights or not. *Id.* at 219. In such circumstances, the interviewer may clarify the intent of the defendant by continued questioning as to whether the defendant does or does not waive his rights. *Id.* Where an individual has been read his *Miranda* rights, if he or she indicates in any manner, at any time before or during questioning, that he wants to remain silent, the interrogation must stop. *State v. Wolf* 91 S.W.3d 636, 643 (Mo.App.2002) (quoting *Miranda v. Arizona* 384 U.S. 436, 473–74, 86 S.Ct. 1602, 1627, 16 L.Ed.2d 694, 723 (1966)). However, the suspect must give a consistent, clear expression of his desire to remain silent in order to invoke his rights sufficiently and terminate questioning. *Id.* (quoting *State v. Simmons,* 944 S.W.2d 165, 173–74 (Mo. banc 1997)). If a person under custodial interrogation wants to revoke his waiver of his right to remain silent, he has an obligation to communicate this revocation in a clear, intelligible fashion. *Id.* If the statement is equivocal or ambiguous, then the police have no obligation to clarify the suspect's intent and may proceed with the interroga-

tion. *Id.* (quoting *Coleman v. Singletary,* 30 F.3d 1420, 1424 (11th Cir.1994)). This Court considers the suspect's statements in their entirety to determine whether they show an unequivocal decision to invoke the right to remain silent. *Id.*

 There is no dispute that Defendant was read his *Miranda* rights prior to his interrogation by Detective Clayborn, that he initially waived his right to remain silent, and that he agreed to answer questions by Detective Clayborn. What is in dispute is whether Defendant revoked his waiver and invoked his right to remain silent and whether Detective Clayborn's request that he put his statement in writing or in an audio recording is questioning after an invocation of the right to remain silent. However, even assuming *arguendo* that Defendant had revoked his waiver and had invoked his right to remain silent and that Detective Clayborn's request for Defendant to memorialize his verbal statement was improper further interrogation, Defendant was not prejudiced by the admission of Exhibit 4. Detective Clayborn testified about the substance of Defendant's oral statement to him, and Exhibit 4 merely recapitulated this unobjected to testimony. "Evidence challenged on constitutional grounds that is cumulative of other, properly admitted evidence cannot have contributed to a defendant's conviction and so is harmless beyond a reasonable doubt." *State v. Davidson,* 242 S.W.3d 409, 418 (Mo.App.2007) (*citing State v. Lopez,* 128 S.W.3d 195, 202 (Mo. App.2004)). Point denied.

The judgment of the trial court is affirmed in part and reversed in part.

ROY L. RICHTER and GARY M. GAERTNER, JR., JJ., concur.