

# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,                    )
                                      )    *Opinion issued April 26, 2022*
           Respondent,        )
                                      )
v.                                    )    No.  SC99332
                                      )
ERIC G. HOLLOWELL,                    )
                                      )
           Appellant.         )


**APPEAL FROM THE CIRCUIT COURT OF WASHINGTON COUNTY**
The Honorable Wendy Wexler Horn, Judge


Eric Hollowell appeals his judgment of conviction after a jury found him guilty of 15 counts of unlawful possession of a firearm.  Because the circuit court committed reversible error by allowing the jury to hear a prejudicial, out-of-court statement made by a witness who never appeared or testified at trial, this Court vacates the circuit court's judgment and remands this case for a new trial.

**Factual Background and Procedural History**

Police officers arrested Hollowell after his wife, Beckey Hollowell, reported incidents of domestic violence.[1]  After Hollowell's arrest, Beckey told Detective Ethan Haworth that Hollowell, a convicted felon, illegally possessed numerous firearms stored at their home.  Beckey allowed law enforcement officers, including Detective Haworth, to enter the home to confiscate the guns.  Using a key in her possession, Beckey unlocked a safe containing 15 firearms, which the officers seized.[2]  The State charged Hollowell with 15 counts of unlawfully possessing a firearm – one count for every firearm found in the safe.[3]  Hollowell moved to dismiss counts two through 15, arguing double jeopardy precluded the State from prosecuting Hollowell separately for each gun recovered from the safe.  The circuit court was not persuaded by Hollowell's double jeopardy argument and overruled the motion.

Hollowell's case proceeded to trial.  During opening statements, the State indicated Beckey would testify.  The State claimed Beckey would tell the jury she periodically

---

[1] To avoid confusion, this Court refers to Beckey Hollowell by her first name. No familiarity or disrespect is intended.

[2] Multiple firearms in the safe were engraved with names suggesting the guns belonged to another member of the household or someone other than Hollowell.

[3] Beckey later advised law enforcement Hollowell had two antique, black powder firearms in the home that were not recovered because they were in a closet separate from the safe. Detective Haworth returned to the home and seized the black powder firearms.  The State, however, did not charge Hollowell for possessing the black powder guns.  *See* § 571.070.3 (A person does not commit the offense of unlawful possession of a firearm for "possession of an antique firearm.").  All statutory references are to RSMo 2016, unless otherwise indicated.

purchased guns on Hollowell's behalf and Hollowell had keys to the gun safe, owned the guns in the safe, and frequently used the guns.

The State called two witnesses to testify at trial:  Detective Haworth and a corrections officer.[4]  The first witness the State called to testify was Detective Haworth. During the State's direct examination, the following exchange took place:

Q: Okay. Let's go back to December 19th of 2018.  Did you speak to Beckey Hollowell about an incident?

A: Yes, sir, I did.

Q: And during that conversation did she tell you that her husband –

HOLLOWELL'S COUNSEL: And, Judge, I'm going to object to hearsay in violation of my client's confrontation clause rights.

STATE'S COUNSEL: Your Honor, this would just go to show subsequent actions, not for the truth of the matter asserted.

THE COURT: Well, that could be, but you're going to have to limit it.  He can't necessarily go into every single thing that she said, but only as it goes to the subsequent course of conduct.

HOLLOWELL'S COUNSEL: And, Judge, I'll stipulate that he went to the residence based on knowledge that there was [sic] firearms there.

THE COURT: Once again, I'm going to assume that she's going to be here to testify as to these facts, but at the same time – I'm making an assumption that may or may not be correct, but I'm assuming that. But at the same time, you can't just go into just unlimited hearsay as –

STATE'S COUNSEL: Sure.

---

[4] The corrections officer worked at the detention facility where Hollowell was held after his arrest and testified Hollowell told him "he was being charged with the [black powder] handgun that he had, but not the guns in the safe."  The State argued this statement established Hollowell knew of the guns in the safe and considered them his property.

THE COURT: – to what she said to him. So only as it is necessary to explain his subsequent course of conduct.

STATE'S COUNSEL: Right. Well, this particular question is: Did she tell you that her husband had several firearms at their home, and so that's – that's what – that's what prompted him to go out there, would be the –

HOLLOWELL'S COUNSEL: Same objection, Judge.

THE COURT: That will be overruled.

A: Yes, sir.

Q: (By State's Counsel) She did. Okay. And was her husband Eric Hollowell?

A: What's the question, sir?

Q: Was Beckey Hollowell's husband Eric Hollowell?

A: Yes, sir.

On cross-examination, Hollowell's counsel attempted to temper the evidence allowed on direct examination over Hollowell's objection by asking Detective Haworth:

Q:     You ultimately went to Beckey Hollowell's residence because she's the one who provided you with information that there were firearms, correct?

A:     Yes ma'am.

. . . .

Q:     And you ultimately took the guns that were submitted by the State into evidence because of the words that Beckey Hollowell told you, right?

A:     Yes, ma'am.

Q:     That [the firearms] had belonged to Eric [Hollowell], correct?

A:     Yes, ma'am.

Hollowell's counsel's cross-examination established Detective Haworth relied solely on Beckey's statement to connect Hollowell to the guns recovered from the home.

4

Hollowell's counsel also established during cross-examination that Detective Haworth did not know how many people lived in the home and did not investigate whether any other occupants of the home owned the guns.

Despite the State's representations during opening statements and the circuit court's assumptions regarding Beckey's appearance and testimony, Beckey never appeared or testified at trial. Because Beckey did not testify, the State asked the court before the close of the State's evidence whether Beckey's out-of-court statement elicited during Detective Haworth's cross-examination could be used as substantive evidence to establish and persuade the jury Hollowell possessed the guns recovered from the home. Hollowell's counsel argued Beckey's out-of-court statement was hearsay and could only be used for the limited purpose to explain Detective Haworth's subsequent conduct. The circuit court disagreed, concluding Beckey's statement introduced through cross-examination could be considered as substantive evidence and the court allowed the State to rely on this evidence to support its case against Hollowell. At the close of all the evidence, Hollowell moved for judgment of acquittal, claiming the State failed to present sufficient evidence to convict him of illegally possessing the 15 firearms seized by law enforcement. The circuit court overruled Hollowell's motion.

During closing arguments, the State argued to the jury:

Now, you heard that Beckey Hollowell, [Hollowell's] wife, told Detective Haworth that the guns belonged to Eric. That was her statement, that the guns belonged to Eric, not to her. So could that—could Eric exercise control over the guns? Absolutely.

The jury found Hollowell guilty of all 15 counts of unlawful possession of a firearm.

5

Following the jury's verdict, Hollowell filed a motion for new trial.  In response to the motion, the trial judge noted her general displeasure of the events at trial, stating the case was "barely submissible" and "there were a lot of things about this trial, really and truly, that troubled [her]."  The judge indicated she "never made it a secret that [she] was extremely unhappy over the fact that Beckey Hollowell did not show up for the trial."  The judge also indicated had she known Beckey would not testify, she would have prevented the specific out-of-court statement elicited during Detective Haworth's direct examination.  Lastly, the judge noted this testimony could have been restricted, limiting the statement to "Beckey Hollowell told me something …. Because of that I showed up at the residence."  Ultimately, however, the circuit court overruled the motion, entered a judgment of conviction, and sentenced Hollowell to concurrent seven-year sentences on 14 counts and a four-year sentence for the remaining count to be served consecutively in the department of corrections.  Hollowell appeals.[5]

## Analysis

Hollowell argues the circuit court erred in overruling his objection to Detective Haworth's testimony as to Beckey's out-of-court statement, his motion for judgment of acquittal at the close of all the evidence due to insufficient evidence, and his motion to dismiss counts two through 15 on double jeopardy grounds.  This Court finds sufficient evidence existed at trial to convict Hollowell of the 15 counts of illegal possession of a firearm and the separate firearm convictions for each of the 15 counts do not violate double

---

[5] This Court has jurisdiction over Hollowell's appeal pursuant to article V, section 10 of the Missouri Constitution.

jeopardy. This Court, however, finds the circuit court erred in allowing Detective Haworth to testify about Beckey's out-of-court statement over Hollowell's objection. Due to the circuit court's error, the judgment of conviction is vacated, and the case is remanded for a new trial.

## I. Evidentiary Ruling

### A. Hollowell Did Not Waive His Objection

Before analyzing whether the circuit court should have excluded Detective Haworth's testimony about Beckey's out-of-court statement during direct examination, this Court must determine whether Hollowell waived his objection by eliciting the same testimony from Detective Haworth on cross-examination. When a party objects to the introduction of evidence and the objection is overruled, the party does not waive the objection by eliciting that same evidence on cross-examination. *Levin v. Hilliard*, 266 S.W.2d 573, 577 (Mo. 1954). It would "be a strange doctrine, and a rule utterly destructive of the right and all the benefits of cross-examination, to hold a litigant to have waived his objection to improper testimony because, by further inquiry, he sought on cross-examination to break the force or demonstrate the untruthfulness of the evidence given in chief." *Id*. This Court has made clear eliciting cross-examination testimony that was previously objected to "would neither waive nor cure the error in the admission of that evidence." *Chester v. Shockley*, 304 S.W.2d 831, 835 (Mo. 1957).

Hollowell, therefore, did not waive his objection to the introduction of Beckey's out-of-court statement by cross-examining Detective Haworth about the same matter. On direct examination, Detective Haworth testified Beckey told him Hollowell owned the

7

firearms in the safe. The circuit court, over Hollowell's objection and assuming Beckey would later testify to the same facts, admitted Beckey's out-of-court statement for the limited purpose of explaining Detective Haworth's subsequent conduct of going to the home and recovering the firearms. On cross-examination, in an effort to "break the force" of this evidence, Hollowell's counsel elicited the same statement, establishing Detective Haworth relied solely on Beckey's statement to connect Hollowell to the firearms and did not investigate whether any other occupants of the home owned the guns. Hollowell did not waive his objection by conducting this cross-examination; therefore, the objection is preserved for review.

### B. The Circuit Court Erred by Allowing Detective Haworth to Testify Regarding Beckey's Out-of-Court Statement

The circuit court erred in allowing Detective Haworth to testify about Beckey's out-of-court statement because the testimony went beyond explaining subsequent police conduct and directly implicated Hollowell in the charged offenses. This error prejudiced Hollowell, requiring this Court to vacate Hollowell's judgment of conviction.

Circuit courts have "broad discretion to admit or exclude evidence during a criminal trial, and error occurs only when there is a clear abuse of this discretion." *State v. Loper*, 609 S.W.3d 725, 731 (Mo. banc 2020) (internal quotation omitted). This broad discretion, however, is not endless. *See State v. Walkup*, 220 S.W.3d 748, 756 (Mo. banc 2007). When an evidentiary principle or rule is violated, a circuit court commits error. *Id*. Such error requires reversal upon a showing of prejudice, or in other words, if such error deprives the accused of a fair trial. *State v. Taylor*, 298 S.W.3d 482, 491-92 (Mo. banc 2009);

8

*Walkup*, 220 S.W.3d at 757; *State v. Hoover*, 220 S.W.3d 395, 401-402, 407-08 (Mo. App. 2007); *State v. Robinson*, 196 S.W.3d 567, 573 (Mo. App. 2006). An accused is deprived of a fair trial and prejudice is established if the Court concludes the erroneously admitted evidence improperly influenced the jury to a point at which there is a reasonable probability that, but for the improperly admitted evidence, the jury would have reached a different result. *Walkup*, 220 S.W.3d at 758; *State v. Douglas*, 131 S.W.3d 818, 824-25 (Mo. App. 2004).

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted and depends on the statement's veracity for its value. *State v. Kemp*, 212 S.W.3d 135, 146 (Mo. banc 2007). Hearsay statements are inadmissible unless the statements fall under a recognized exception to the rule against hearsay. *Id*. If out-of-court statements are not offered for the truth of the matter asserted, however, the statements do not constitute hearsay, and "there is no basis for requiring the proponent of the testimony to fit within an exception to the hearsay rule[.]" *State v. Bell*, 62 S.W.3d 84, 89 (Mo. App. 2001) (internal quotation omitted); *Douglas*, 131 S.W.3d at 823-24. Out-of-court statements offered not for the truth of the matter asserted but rather to explain and provide context for subsequent police action are not hearsay and are admissible. *Bell*, 62 S.W.3d at 89; *Douglas*, 131 S.W.3d at 824. Out-of-court statements admitted to explain subsequent police conduct, however, must be used only for this limited purpose. *Douglas*, 131 S.W.3d at 824. Because out-of-court statements admitted to explain subsequent police conduct are not offered for the truth of the matter asserted, such statements cannot be used as substantive evidence to prove or establish the truth of the matter asserted. *Id.*

9

The jury or fact finder, however, may be unaware of the limited purpose of the admitted statements, so the admission of an out-of-court statement to explain subsequent police conduct is subject to careful scrutiny and limitation. "[W]hen such out-of-court statements go beyond what is necessary to explain subsequent police conduct," the statements are inadmissible. *Loper*, 609 S.W.3d at 738 (alteration in original) (internal quotation omitted). Such testimony is inadmissible if the witness "is permitted to narrate the details of an investigation in a way that unnecessarily puts incriminating information about the defendant before the jury." *Id.* Evidence offered to explain subsequent police conduct must be necessary to provide background and context to police conduct and must not be allowed "to elicit details directly connecting the defendant to the crime." *Hoover*, 220 S.W.3d at 407. Otherwise, evidence admitted to explain subsequent police conduct "is susceptible to abuse." *State v. Cole*, 483 S.W.3d 470, 474 (Mo. App. 2016).

This Court addressed this very issue in *State v. Edwards*, 116 S.W.3d 511 (Mo. banc 2003). In *Edwards*, the defendant was charged with murder. *Id.* at 522. The defendant's accomplice told police where to find the murder weapon and implicated the defendant in the homicide. *Id.* At trial, the defendant challenged the admissibility of the statements the accomplice made to police because the accomplice was not expected to testify at trial. *Id.* at 532. The State, however, argued the statements were necessary and introduced properly, even if the accomplice did not testify, to explain why the officers went to the "house where they found the murder weapon." *Id.* The circuit court permitted use of some of the accomplice's statements "for this limited type of purpose." *Id.* On appeal, the defendant

argued the statements the circuit court admitted were not necessary to explain subsequent conduct and the limitation on use was not effective. *Id.*

Although this Court rejected the defendant's challenge, its reasons for doing so illustrate the problem presented by this case:

> Here, the record shows that the court and all counsel were very concerned about avoiding the types of improper inferences of which defendant now complains. The court went over this issue with counsel very carefully outside the hearing of the jury, approving some questions and disapproving others. *The witnesses were directed not to repeat any statements by [the accomplice] implicating defendant.* To a large extent they were successful, merely testifying about their investigations. When testifying about their discussions with [the accomplice], they generally would state that they spoke with him and, then, went to a particular location or talked with a particular witness. *They attempted not to directly inform the jury of statements made by [the accomplice], and on the few occasions when they spoke more directly about what [the accomplice] told them, nothing that they said suggested that defendant was guilty.* The police rather testified as to how they found the gun, and it was admitted that the gun they found was the murder weapon. It was not claimed that the defendant used the gun himself. The police were permitted to explain how they found the murder weapon.

*Id.* at 532-33 (emphasis added).

This Court has more recently addressed this issue in *Loper*, 609 S.W.3d at 737-39. In *Loper*, the circuit court allowed an officer to testify that a doctor at a hospital told him the victim's injuries were not self-inflicted. *Id.* at 737. The defendant argued the testimony was inadmissible because "the statement went beyond what was necessary to explain [the officer]'s subsequent conduct." *Id.* The defendant cited multiple cases in which the court of appeals reversed convictions because an officer's admitted testimony went beyond what was necessary to explain subsequent police conduct and was the only evidence presented to prove the crimes charged. *See State v. Shigemura*, 680 S.W.2d 256, 257-58 (Mo. App.

11

1984) (reversing a conviction based on inadmissible hearsay when an officer testified a confidential informant advised him the defendant was in possession of stolen property and intended to sell the contraband when this hearsay statement constituted the only evidence the defendant knew the items were stolen); *Douglas*, 131 S.W.3d at 826 (reversing a driving while intoxicated conviction based on inadmissible hearsay when an officer testified the dispatcher informed him about a parked car with a subject "slumped over the wheel" because this constituted the only evidence offered to prove the defendant was operating the vehicle). This Court, however, distinguished these cases from the facts in *Loper*, finding the elicited "testimony was not the only evidence presented to resolve this issue" as another doctor testified at trial that the victim's injuries were not self-inflicted. *Loper*, 609 S.W.3d at 739.

Unlike the facts in *Loper*, Beckey's out-of-court statement elicited through Detective Haworth's testimony was the only direct evidence presented regarding the ultimate factual issue – possession and control of the firearms.[6] This testimony directly implicated Hollowell in the charges against him. Moreover, unlike the questions posed to

---

[6] Other evidence introduced at trial vaguely insinuated Hollowell possessed and controlled the guns. This evidence included Hollowell's statement that he had been charged for the black powder firearms "but not the guns in the safe" and Hollowell's driver's license listing his address. The circuit court noted this evidence could show Hollowell lived in the home where the guns were recovered and had knowledge of the guns in the safe. This evidence, however, would likely be insufficient to support Hollowell's convictions for possessing the firearms. *See State v. Glass*, 439 S.W.3d 838, 846 (Mo. App. 2014) (finding insufficient evidence for illegal firearm possession when the firearms were located in an open gun cabinet in the defendant's parent's bedroom, there was no evidence about who used or owned the weapons, and no evidence was presented that the defendant had routine access to the room with the firearms).

law enforcement officers in *Edwards*, the State's direct examination allowed Detective Haworth to testify beyond what was necessary to explain why he went to Hollowell's home and searched the safe. As the court recognized, the circuit court could have limited this testimony by instructing the State to ask Detective Haworth if Beckey told him something that made him have reason to go to the residence and search the safe without referencing Hollowell's possession of the guns. For these reasons, Detective Haworth's testimony went beyond what was necessary to explain his subsequent conduct and improperly reached the ultimate factual issue to be decided by the jury, directly implicating Hollowell in the charged offense. The circuit court, therefore, erred and abused its discretion in allowing the introduction of Beckey's out-of-court statement over Hollowell's objection without effective limitations.[7]

---

[7] The concurring opinion cites *State v. Dunn*, 817 S.W.2d 241 (Mo. banc 1991), to argue the circuit court did not abuse its discretion. In *Dunn*, however, this Court found no error or abuse of discretion because the question and answer objected to by the defendant, "Why were you at that location?", "I'd been contacted by an informant who stated that -," was not improper as it merely explained that the officer was at the particular location based on information provided by an informant. *Id.* at 243. The defendant in *Dunn* failed to object or request a conference outside the hearing of the jury when the law enforcement officer continued to testify that the informant stated the defendant "had been at his house earlier with some marijuana for sale." *Id*. In upholding the defendant's conviction for selling marijuana, the Court explained it was not the circuit court's "responsibility to foresee" or anticipate the nature of the witness's subsequent testimony. *Id*. Here, however, the question posed to Detective Haworth and objected to by Hollowell was: "Did she tell you that her husband had several firearms at their home, and so that's – that's what – that's what prompted [you] to go out there." Based on this question, the circuit court most certainly understood the improper nature of the testimony the State sought, and the court abused its discretion in overruling Hollowell's objection.

13

This error prejudiced Hollowell. A reasonable probability exists the jury relied on Beckey's out-of-court statement to conclude Hollowell possessed the guns as there was no other direct evidence presented about this issue other than the same testimony elicited during cross-examination. Detective Haworth's cross-examination did not eliminate the prejudice but instead compounded the harm to Hollowell. As a result of the circuit court's erroneous admission of the out-of-court statement on direct examination, Hollowell was left with the Hobson's choice to either temper the evidence on cross-examination or ignore the evidence and hope the jury did not consider the out-of-court statement for the truth of the matter asserted. Either way, Hollowell would be prejudiced by the statement; the only issue was *how* Hollowell would be prejudiced. Because there is a reasonable probability that, but for the admission of Beckey's out-of-court statement on direct examination, the jury would have reached a different result, Hollowell was deprived of a fair trial and was prejudiced. *Douglas*, 131 S.W.3d at 824.

This Court is sympathetic to the challenges such a holding places on the circuit court. Judges presiding over jury trials may not be able to predict the central evidentiary issues in a case before ruling on evidentiary matters – especially at the beginning of a trial. What may appear to be an innocuous statement when initially offered may end up being the pivotal issue at trial. Because trial courts face such unpredictable challenges, appellate courts extend great deference to trial courts' supervision of trials and review circuit court rulings on evidentiary matters for an abuse of discretion. *Walkup*, 220 S.W.3d at 756. The circuit court abuses this discretion, however, when it allows an out-of-court statement to go beyond what is necessary to explain subsequent police conduct and the testimony

14

directly implicates the defendant in the charged offense. *Loper*, 609 S.W.3d at 738; *Hoover*, 220 S.W.3d at 407. Ultimately, circuit courts must ensure the fairness of a trial, especially for those accused of crimes, and abuse their discretion when the accused is deprived of a fair trial. *See generally Robinson*, 196 S.W.3d at 573; *see also Hoover*, 220 S.W.3d at 407-08.

The circuit court was aware of the risks associated with allowing Detective Haworth's testimony. The circuit court repeatedly stated it permitted Detective Haworth to testify about Beckey's out-of-court statement because the court assumed Beckey would testify about the same facts.[8] The circuit court acknowledged the State's case was "barely submissible" and stated it "was extremely unhappy over the fact that Beckey Hollowell did not show up for the trial." The circuit court recognized and articulated ways the State could have limited Detective Haworth's testimony to explain why he went to Hollowell's home to search for firearms without directly connecting Hollowell to the firearms and undermining the fairness of the trial. The circuit court also realized this critical evidence went to the very heart of the case, consequently undermining the fairness of the trial.

In overruling Hollowell's objection to Detective Haworth's testimony, the circuit court, in effect, permitted Beckey to testify at trial that Hollowell possessed the 15 firearms without appearing or being subject to cross-examination. As Hollowell's counsel

---

[8] Had Beckey appeared and testified at trial, the prejudicial effect of Detective Haworth's testimony would have greatly diminished. *See State v. Jones*, 369 S.W.3d 77, 80 (Mo. App. 2012) ("[T]here is no prejudice where the declarant testified at trial on the same matter, and was subject to cross-examination because the principal defects in hearsay testimony are alleviated.").

15

accurately argued, "[t]he State's whole case was Beckey Hollowell's words, yet Beckey Hollowell was never at trial." Allowing this critical testimony into evidence in this manner is contrary to the very fabric of our criminal justice system and the notion of a fair trial. *See generally State v. Robinson*, 484 S.W.2d 186, 189 (Mo. 1972) (Noting courts generally disfavor hearsay testimony "because the person who makes the statement offered is not under oath and is not subject to cross-examination" (internal quotations omitted)). While the circuit court may not have known Beckey would fail to testify at trial when it ruled on Hollowell's objection to Detective Haworth's testimony, once the circuit court determined Beckey would not testify, it had the opportunity to cure its error by sustaining Hollowell's motion for a new trial. Instead, the circuit court overruled Hollowell's motion and abused its discretion by failing to ensure Hollowell received a fair trial. As a result, the circuit court's error in allowing Detective Haworth's testimony on direct examination requires this Court vacate Hollowell's judgment of conviction.

### C. Evidence Elicited on Cross-Examination Considered Substantively

The State concedes Hollowell's conviction and sentence must be vacated but argues, along with Hollowell and the concurring opinion, that the reversible error arises from the circuit court allowing the jury to consider Detective Haworth's testimony elicited on cross-examination for the truth of the matter asserted. This argument, however, lacks merit.

It is a general evidentiary principle that, once evidence is admitted without objection, it can be used by any party for any purpose. *See Crampton v. Osborn*, 201 S.W.2d 336, 340 (Mo. 1947) (holding "[R]elevant evidence received without objection may properly be considered, although it would have been excluded if objection had been

16

made."); *see also Goodman v. Allen Cab Co.*, 232 S.W.2d 535, 539 (Mo. 1950) ("stating [E]ven hearsay evidence admitted without objection has been considered" substantive evidence.). If this were not the case, then Hollowell's efforts on cross-examination to temper the impact of Beckey's out-of-court statement on direct examination would have been for naught. The evidence offered on cross-examination must be adduced for the truth of the matter asserted to fulfill its designed purpose – "to break the force or demonstrate the untruthfulness of the evidence" elicited on direct examination. *Levin*, 266 S.W.2d at 577.

While the State would have been prohibited from using Detective Haworth's direct examination testimony to argue Hollowell possessed and controlled the guns because this testimony was introduced to explain subsequent police conduct and not offered for the truth of the matter asserted, once the same evidence was elicited on cross-examination, it was fair game for both parties to use and argue for any purpose. It would be illogical to prohibit the State, or any party, from using evidence admitted without objection in arguing the case. For these reasons, the testimony elicited on cross-examination was properly used for the truth of the matter. The circuit court's error was not in allowing the testimony to be used in this manner but, rather, in admitting the testimony in the first instance during direct-examination.

## II. Sufficient Evidence Existed at Trial for a Reasonable Juror to Find Hollowell Guilty Beyond a Reasonable Doubt

Because the circuit court committed reversible error in allowing Detective Haworth to testify about Beckey's out-of-court statement, this Court must now turn to the question

of the appropriate remedy. Hollowell argues this Court should enter a judgment of acquittal because there was insufficient evidence to support Hollowell's convictions. The State contends this Court should remand for retrial.

"When considering the sufficiency of the evidence on appeal, this Court must determine whether sufficient evidence permits a reasonable juror to find guilt beyond a reasonable doubt." *State v. Stewart*, 560 S.W.3d 531, 533 (Mo. banc 2018) (internal quotations omitted). "The evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict." *Id.*

Sufficient evidence existed to support Hollowell's convictions because the jury could consider Detective Haworth's testimony as to Beckey's out-of-court statement elicited on cross-examination for the truth of the matter asserted. On cross-examination, Detective Haworth testified Beckey told him there were firearms in the home that belonged to Hollowell. This testimony alone, considered for the truth of the matter asserted, is sufficient to permit a reasonable jury to find Hollowell possessed and controlled the firearms beyond a reasonable doubt. Therefore, sufficient evidence was presented at trial, and the appropriate remedy, as a result of the circuit court's prejudicial evidentiary ruling, is to remand for a new trial.[9]

---

[9] Even if this Court were to determine the evidence elicited on cross-examination could not be used for the truth of the matter asserted as the State and Hollowell contend, the proper remedy would be to remand for a new trial to allow the State the opportunity to present sufficient evidence. As this Court has stated:

## III. Separate Convictions for Each Firearm Do Not Violate Double Jeopardy

Hollowell claims the circuit court erred in overruling his motion to dismiss 14 of the 15 counts charged against him and in accepting the jury's verdicts on all 15 counts of unlawful possession of a firearm. Hollowell asserts convictions on 14 of the 15 counts of unlawful possession of a firearm under section 571.070 violate his right to be free from double jeopardy. U.S. Const. amend. V. Hollowell argues he did not commit 15 offenses, but rather, he committed one offense of unlawful possession of firearms. Hollowell asserts section 571.070 is ambiguous as to the unit of prosecution for the offense and the rule of lenity requires construction favorable to him.

"The double jeopardy clause protects a defendant from both successive prosecution for the same offense and from multiple punishments for the same offense." *State v. Roggenbuck*, 387 S.W.3d 376, 381 (Mo. banc 2012). The double jeopardy analysis for a claim of multiple punishments is focused on "conduct the legislature intended to proscribe

---

When the trial court erroneously admits evidence resulting in reversal, . . . the State should not be precluded from retrial even though when such evidence is discounted there may be evidentiary insufficiency. The prosecution in proving its case is entitled to rely upon the rulings of the court and proceed accordingly. If the evidence offered by the State is received after challenge and is legally sufficient to establish the guilt of the accused, the State is not obligated to go further and adduce additional evidence[.]

*State v. Wood*, 596 S.W.2d 394, 398-99 (Mo. banc 1980); *see also State v. Liberty*, 370 S.W.3d 537, 553-54 (Mo. banc 2012); *State v. Kinkead*, 983 S.W.2d 518, 519 (Mo. banc 1998). At the State's request, the circuit court allowed the State to use Detective Haworth's testimony elicited on cross-examination for the truth of the matter asserted. Even if this ruling was erroneous, which it was not, the State was entitled to rely upon this ruling when deciding whether to rest its case or present additional evidence. The appropriate remedy then would be to remand for retrial, not to enter judgment of acquittal for lack of evidence pursuant to this Court's holding in *Wood*.

under the statute" and whether cumulative punishments were intended by the legislature. *Liberty*, 370 S.W.3d at 546-47. "To determine whether the legislature intended multiple punishments, a court looks first to the 'unit of prosecution' allowed by the statutes under which the defendant was charged." *State v. Sanchez*, 186 S.W.3d 260, 267 (Mo. banc 2006). To ascertain the legislature's intent, this Court must give statutory language its "plain and rational meaning." *State ex rel. Wright v. Carter*, 319 S.W.2d 596, 599 (Mo. banc 1958). "This Court must presume every word, sentence or clause in a statute has effect[.]" *State v. Johnson*, 524 S.W.3d 505, 511 (Mo. banc 2017).

Section 571.070 provides:

1. A person commits the offense of unlawful possession of *a firearm* if such person knowingly has *any firearm* in his or her possession and:
(1) Such person has been convicted of a felony under the laws of this state, or of a crime under the laws of any state or of the United States which, if committed within this state, would be a felony; or
(2) Such person is a fugitive from justice, is habitually in an intoxicated or drugged condition, or is currently adjudged mentally incompetent.

(emphasis added). "Firearm" is defined as "any weapon that is designed or adapted to expel a projectile by the action of an explosive." Section 571.010(8).

Hollowell primarily relies on *Liberty* to argue the word "any" in section 571.070 is ambiguous as to the unit of prosecution for the offense. In *Liberty*, this Court found multiple convictions of possession of child pornography violated double jeopardy because the charging statute was ambiguous. 370 S.W.3d at 550. The statute in *Liberty* provided:

1. A person commits the crime of possession of child pornography if, knowing of its content and character, such person possesses *any obscene material* that has a child as one of its participants or portrays what appears to be a child as an observer or participant of sexual conduct.

20

2. Possession of child pornography is a class D felony unless the person has pleaded guilty to or has been found guilty of an offense under this section, in which case it is a class C felony.

*Id.* at 547 (quoting section 573.037, RSMo Supp. 2007). This Court found "the proscription in section 573.037 against possession of '*any* obscene material' is ambiguous, for it reasonably could be interpreted to permit either a single prosecution or multiple prosecutions for a single incidence of possession of [multiple] still photographs of child pornography." *Id.* at 548. This Court discussed the ambiguity with reference to the word "material" being "defined in section 571.010 as both singular and plural items." *Id.* at 550.[10]

Hollowell focuses on the word "any" in section 571.070 and fails to analyze the entirety of the statutory provision, which distinguishes it from the statute at issue in *Liberty*. The plain and rational meaning of the word "firearm" in section 571.070 demonstrates the unit of prosecution is the possession of a singular firearm. As used in section 571.070, "Firearm" cannot be interpreted as plural. The phrase "unlawful possession of a firearm" emphasizes the singular nature of "firearm." Therefore, section 571.070 is not ambiguous and possession of each firearm constitutes a separate offense. *See State v. Merritt*, 467 S.W.3d 808, 816 (Mo. banc 2015) (reversing and remanding the circuit court's dismissal of three counts of unlawful possession of a firearm under section 571.070, based on the possession of three different firearms on one date). Because there is no ambiguity and the

---

[10] Section 573.010(9), RSMo Supp. 2007, defined "material" as "anything printed or written, or any picture, drawing, photograph, motion picture film, videotape or videotape production," but also as "undeveloped photographs, molds, printing plates, stored computer data and other latent representational objects."

21

legislature's intent is clear from the plain text of the statute, the rule of lenity is not applicable. *See Liberty*, 370 S.W.3d at 547 (explaining the "rule of lenity applies to interpretation of statutes only if, after seizing everything from which aid can be derived, [the court] can make no more than a guess as to what the legislature intended." (alteration in original)). For these reasons, the circuit court did not error in overruling Hollowell's motion to dismiss and accepting the jury's verdicts on all 15 counts of unlawful possession of a firearm.

## Conclusion

For the foregoing reasons, this Court vacates the circuit court's judgment and remands for a new trial consistent with this opinion.

_____
W. Brent Powell, Judge

Wilson, C.J., Russell, Breckenridge and Ransom, JJ., concur;
Fischer, J., concurs in separate opinion filed; Draper, J.,
concurs in opinion of Fischer, J.



STATE OF MISSOURI, )
)
            Respondent, )
)
v. )    No. SC99332
)
ERIC G. HOLLOWELL, )
)
            Appellant. )

**CONCURRING OPINION**

I agree with the principal opinion's ultimate conclusion that this Court should vacate Eric Hollowell's sentences and remand his case for a new trial. I write separately, however, because I disagree about the basis upon which to vacate the sentences.

The principal opinion holds the circuit court abused its discretion in admitting Beckey's statement during the State's direct examination of Detective Ethan Haworth to explain his subsequent conduct. I disagree. In so concluding, the principal opinion cites two recent decisions by this Court concerning hearsay statements admitted to explain subsequent police conduct, *State v. Loper*, 609 S.W.3d 725 (Mo. banc 2020), and *State v. Edwards*, 116 S.W.3d 511 (Mo. banc 2003). In both *Loper* and *Edwards*, this Court concluded the circuit court did not abuse its discretion in admitting statements over the

defendant's objection to hearsay, and neither case provides a basis upon which to conclude the circuit court in this case abused its discretion.

This Court clearly defined the applicable standard of review in *Loper*:

> The circuit court has broad discretion to admit or exclude evidence during a criminal trial, and error occurs only when there is a clear abuse of this discretion. An abuse of discretion occurs only if the circuit court's ruling admitting or excluding evidence is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration.

609 S.W.3d at 731 (internal quotations and citations omitted).

In both *Loper* and *Edwards*, this Court analyzed the context of the challenged statements to determine whether the circuit court abused its discretion. *See Loper*, 609 S.W.3d at 739; *Edwards*, 116 S.W.3d at 532.[1]  Importantly, however, in neither *Loper* nor *Edwards* did this Court set out a more stringent analysis for admitting hearsay statements to explain subsequent police conduct than abuse of discretion.

### A. The Circuit Court Did Not Abuse Its Discretion During Detective Haworth's Direct Examination

The principal opinion seeks to distinguish this case from *Loper* and *Edwards* because Beckey's out-of-court statement concerned direct evidence of an ultimate factual issue—possession and control of the firearms—and wrongly concludes this difference indicates the circuit court in this case abused its discretion.

---

[1] In *Loper*, this Court considered the fact that the State presented additional evidence to resolve the issue addressed in the challenged statement.  In *Edwards*, this Court considered that the State argued it needed to explain why police went to a certain location to locate evidence, the circuit court did not admit the statement for its truth, and the circuit court spoke to both parties about the use of the statement outside the presence of the jury.

2

To the contrary, this Court has never prohibited such testimony. This incongruity is evident by this Court's opinion in *State v. Dunn*, 817 S.W.2d 241 (Mo. banc 1991). In *Dunn*, a jury found the defendant guilty of selling marijuana. *Id*. at 242. At trial, the State questioned a police officer about his conversation with an informant and asked, "Why were you at that location?" *Id*. at 243. The officer responded an informant told him the defendant had been at his house earlier with some marijuana for sale. *Id*. The defendant objected during the officer's answer and the circuit court overruled the objection. *Id*. Notably, the court did not speak to the parties outside the hearing of the jury. *Id*. Even so, this Court concluded the circuit court did not abuse its discretion in allowing the officer to testify to what the informant had told him. *Id*.[2]

The circuit court in this case certainly took more care to limit the effect of the out-of-court statement than in *Dunn*. In this case, like in *Edwards*, the circuit court spoke to both parties out of the hearing of the jury and indicated the State must limit its questioning of Detective Haworth and Beckey's statement would be admitted only to explain Detective Haworth's subsequent conduct—not for its truth. This demonstrates the circuit court's careful consideration of its ruling. The circuit court, in my view at that time, did not abuse its discretion.

---

[2] The principal opinion wrongly dismisses this Court's conclusion in *Dunn*, suggesting the circuit court in that case did not have the same amount of information about the out-of-court statement at issue as the circuit court in this case. This overstates this Court's reasoning. At the point the defendant in *Dunn* objected, the officer had already started responding to the State's question answering, "I'd been contacted by an informant *who stated that*—." While the circuit court in *Dunn* did not know the exact language of the rest of the officer's response, it did know the officer was about to repeat the non-testifying informant's out-of-court statement to explain the officer's subsequent conduct.

3

The principal opinion employs *Loper* and *Edwards* to illustrate the circuit court could have done more to limit Detective Haworth's testimony regarding Beckey's statement, but in doing so, the principal opinion holds the circuit court in this case to a standard that does not and has never existed.

**B. The Circuit Court Abused Its Discretion During Detective Haworth's Cross Examination**

Though it was not error to admit Beckey's non-hearsay statement for the limited purpose of explaining Detective Haworth's subsequent conduct during direct examination, the circuit court did err when it permitted Beckey's statement elicited during Detective Haworth's cross examination to be considered as substantive evidence in this case. On direct examination by the State, Detective Haworth testified Beckey told him Hollowell owned the firearms in the safe. The circuit court, over Hollowell's objection, admitted Beckey's statement for the limited purpose to explain Detective Haworth's subsequent conduct. On cross-examination, in anticipation of Beckey testifying at trial and in an effort to impeach Beckey's credibility, Hollowell's counsel elicited the same statement.

At the close of evidence, after Beckey failed to appear and did not testify, the circuit court permitted Beckey's statement to be used for its truth. This ruling was based on the notion that, because Hollowell's counsel elicited the content of Beckey's statement during cross-examination of Detective Haworth, defense counsel waived its earlier

4

objection and, therefore, the statement could be considered as substantive evidence.[3] This ruling was erroneous.

As the principal opinion correctly concludes, Hollowell did not waive his objection to Beckey's statement because he was entitled to "break the force" of the objected-to evidence. It was, therefore, error for the circuit court to permit Beckey's statement to be considered for its truth.

Additionally, a reasonable probability exists Beckey's hearsay statement affected the outcome of the trial because her statement was the only direct testimony that Hollowell possessed the firearms seized from the safe. While the State did produce evidence that *may* have circumstantially created an inference Hollowell possessed the firearms, Beckey's statement was by far the most direct evidence of that fact.

For this reason, I concur with the principal opinion that Hollowell's sentences should be vacated and his case remanded for a new trial.

_____
Zel M. Fischer, Judge

---

[3] Though the State presented this argument initially on appeal, it now concedes the circuit court abused its discretion in admitting Beckey's statement for its truth.